# Woodward Iron Co. v. Herndon, Administrator.

*Action for Damages against Employer, by Administrator of Deceased Employè.*

1. *Negligence of engineer; averment of complaint.*—An engineer, in the employment of a railroad company and in charge of an engine which he is running over a track of said company, is *prima facie* in

| 114 | 191 |
| 114 | 255 |
| 114 | 191 |
| 119 | 619 |
| 114 | 191 |
| 121 | 57 |
| 114 | 191 |
| 123 | 245 |
| 114 | 191 |
| s130 | 368 |
| s130 | 372 |
| 114 | 191 |
| 135 | 185 |
| 114 | 191 |
| 142 · | 126 |

[Woodward Iron Co. v. Herndon, Adm'r.]

the discharge of his duties as engineer under such employment; and in an action against a railroad company, a complaint which alleges that the injury complained of resulted from the negligence of an engineer, who was employed by defendant, and who, at the time of the injury, was in charge of an engine on defendant's track, sufficiently charges negligence on the part of the engineer, to render the defendant liable therefor, under subdivision 5 of section 2590 of the Code of 1886, without the additional averment that the engineer was at the time of the injury in the discharge of the duties imposed by his employment.

2. *Negligence of superintendent; duplicity of complaint counting thereon.*—A complaint which counts upon the negligence of a person to whom was intrusted the superintendence of operating and running the railroad of defendant and its trains thereon, and which avers that such superintendent, knowing that the railroad track was frequently covered with and obscured by smoke from coke ovens near by, negligently allowed or permitted the said persons or operatives running the trains of said defendant to run into and through said smoke or on to the said track when the smoke obscured the same, "without giving proper signals or taking other necessary means of precaution to ascertain whether the said track was occupied by other persons in the employment of defendant, and whether other trains or cars or hand-cars were upon said track," is not demurrable for duplicity; "proper signals" and "other necessary means of precaution," to this end, being but one and the same thing.

3. *Action for negligence; sufficiency of complaint; averment of name of party to whose negligence injury is imputed.*—In an action against an employer to recover damages for personal injuries to an employé, where it is alleged in the complaint that the injury was caused by reason of defects in the condition of the ways, works, machinery or plant of defendant, which defect arose from, or had not been discovered by reason of, the negligence of some person entrusted by defendant with the duty of seeing that the ways, works, machinery or plant were in proper condition, (Code of 1886, § 2590, subdiv. 1), it is not necessary to aver the name of the person so entrusted with such duty. (*Louisville & Nashville R. R. Co. v. Bouldin,* 110 Ala. 185, overruled, so far as it conflicts with this proposition.)

4. *Same; same; same.*—In an action against an employer to recover damages for personal injuries to an employé, when a recovery is sought under subdivision 2 of section 2590 of the Code of 1886, and it is alleged in the complaint that the injury was caused by reason of the negligence of another employé of the defendant intrusted with superintendence, "whilst in the exercise of such superintendence," the complaint, to be sufficient and not subject to demurrer, must aver the name of such superintendent so charged to have been negligent.

5. *Rulings on pleading; error without injury.*—Where the defendant has the benefit of the facts set up as a defense in a plea to which a

[Woodward Iron Co. v. Herndon, Adm'r.]

demurrer is sustained under other pleas upon which issue was joined, the sustaining of the demurrer to such plea, if error, is error without injury.

6. *Rulings upon evidence; error without injury.*—The sustaining of an objection to a question asked a witness, or the exclusion of certain testimony, is not prejudicial to the party asking the question or offering the testimony, when the question is subsequently answered by the witness and the testimony offered is afterwards introduced.

7. *Action for personal injuries; irrelevant evidence.*—In an action against a railroad company by an administrator of a deceased employé of defendant, to recover damages for the alleged negligence resulting in his intestate's death, where it is shown that the death of plaintiff's intestate was caused by the collision of a train on defendant's road with a hand-car upon which the deceased was riding in the discharge of the duties of his employment, and the trial proceeded on the assumption that the train had the right of way on the track over the hand-car, and no issue was made as to such right of precedence, evidence as to the rules and customs obtaining on other railroads as to the right of way between trains and hand-cars is not pertinent, and such evidence is irrelevant, immaterial and inadmissible.

8. *Evidence; examination in rebuttal.*—In the rebutting examination of a witness, evidence that is not in rebuttal of any testimony adduced on the cross-examination of the witness is inadmissible; and questions calling for such testimony are properly disallowed.

9. *Action for negligence of engineer; when affirmative charge properly refused.*—In an action by an administrator of a deceased employé of defendant, to recover damages for the death of his intestate, which was caused by one of defendant's trains colliding with one of its hand-cars upon which plaintiff's intestate was riding in the discharge of the duties of his employment, at a point on defendant's track which was covered with smoke from coke ovens near by, where one of the counts of the complaint counts upon the negligence of the engineer of said train, and charges that he was negligent in failing to ring the bell or blow the whistle "when entering the smoke which covered the track," and several witnesses testify that the only signal given at all was given by the blowing of the whistle when the engine was fifty yards or more from the smoke, the defendant is not entitled to the general affirmative charge on such count; the blowing of the whistle at such a distance not being the giving of a signal of alarm "when entering the smoke."

10. *Same; charge to the jury.*—In such an action, where some of the counts of the complaint rely for a recovery upon the failure of the engineer to ring the bell or blow the whistle at short intervals while passing through the dense smoke that covered and obscured the track for a great distance, embracing the point of collision between his train and the hand-car on which plaintiff's intestate was riding, if the evidence showed there was such negligence on the part of the engineer,

[Woodward Iron Co. v. Herndon, Adm'r.]

the fact that the hand-car, entering from the opposite side, was in the smoke before the colliding engine reached it, does not of itself relieve the defendant from liability for such negligence; and a charge which instructs the jury that under such circumstances the plaintiff could not recover for such negligence on the part of the engineer, is erroneous and properly refused.

11. *Same; when question of contributory negligence for the jury and not for the court; case at bar.*—In an action by an administrator of a deceased employé of defendant to recover damages for the death of his intestate, which was caused by defendant's switch engine colliding with one of its hand-cars upon which defendant was riding, the following facts were shown: Within the defendant's yard one of its tracks ran along by the side of a battery of coke ovens, the smoke from which often covered the said track, and at the time of the collision totally obscured it for the whole length of the battery, a distance of 250 or 300 yards. The switch or yard engine was used in switching cars to and from the coke ovens, and had no schedule for running about the yard, but was likely to be passing on the track by the coke ovens at any time, and these facts were known to plaintiff's intestate, who was in defendant's employment as foreman of the track men. Plaintiff's intestate, with the section hands, who had been at work on defendant's road leading out to one of its mines, boarded his hand-car immediately after one of defendant's coal trains passed going to the yard, and followed said train in. Just before reaching the smoke that covered the track on which the incoming train and the hand-car were to pass, there was a curve in the track and an embankment, which prevented the plaintiff's intestate from seeing said train, and said train passed out of sight, went through the smoke and onto another track, beyond the coke ovens. The yard engine, which was beyond the switch at which the coal train passed to the side track from the track by the coke ovens, came down the track for the purpose of switching cars onto the track covered and obscured by smoke, and when about midway the length of the coke oven battery, it collided with the hand-car on which plaintiff's intestate was riding. The hand-car was running at 10 or 12 miles an hour, and plaintiff's intestate did not stop it on entering the smoke, or send a flagman forward through the smoke to give warning of its approach. The evidence as to the distance between the incoming train and the hand-car following it, at the time the former entered the smoke, was conflicting; but there was evidence from which the jury could infer that plaintiff's intestate knew how close the hand-car was to said train. There was also evidence tending to show that the engine which collided with the hand-car started down the track immediately after the incoming train went onto the other track, and proceeded down the track into the smoke at a speed of from 8 to 12 miles an hour, which was a great deal faster than it was accustomed or required to run along there; and that if said engine had come down the track at the speed of two or three miles an hour, which it was accustomed to do,

[Woodward Iron Co. v. Herndon, Adm'r.]

the hand-car would have gotten through the smoke to a place of safety, or where a probable collision could have been averted. *Held:* The question of the plaintiff's intestate having been guilty of negligence which proximately contributed to his injury was one of fact for the jury; and that, therefore, charges to the jury, which pretermit all reference to the incoming train which the hand-car was following, or which ignore the evidence tending to show that the yard engine came down the track much more rapidly than was customary and much in excess of its prescribed rate of speed, or which take from the consideration of the jury the evidence from which they could have inferred that the plaintiff's intestate knew how close his hand-car was to the incoming train when the latter entered the smoke, or which deprive the jury of the right to consider the evidence tending to show that plaintiff's intestate was close enough to the incoming train to have gotten through the smoke without injury, if the yard engine had been run at its usual speed, and which, without submitting the consideration of such tendencies of the evidence, instruct the jury as matter of law that plaintiff's intestate was guilty of contributory negligence, are erroneous and properly refused.

12. *Same; same.*—In such case, a charge which, postulating that plaintiff's intestate did not see and could not know how far the incoming train was ahead of his hand-car when he entered the smoke, instructs the jury that he was guilty of contributory negligence in not stopping before entering the smoke and sending a flagman forward, asserts a correct proposition and should be given.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This action was brought by the appellee, Thomas H. Herndon, as the administrator of the estate of J. V. Neal, deceased, against the appellant, the Woodward Iron Company; and sought to recover damages for the alleged negligent killing of the plaintiff's intestate by the defendant.

The complaint consisted originally of twenty-two counts, to which counts Nos. 23, 24 and 25 were added by amendment. But on the final trial of the cause, at the request of the defendant, the court gave the general charge in favor of the defendant upon each of the counts numbered 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 18, 19, 20, 21 and 22, and sustained demurrers to counts 5 and 14. Therefore, none of these said counts or the pleading thereon is set out in this statement.

The first count of the complaint was as follows: First. "The plaintiff, in his capacity as administra-

tor of the estate of John V. Neal, deceased, claims of the defendant, a private corporation under the laws of Alabama, ($10,000) ten thousand dollars damages, and alleges that on the 11th day of January, 1894, defendant was a corporation incorporated under the laws of Alabama, engaged in operating coal mines and a furnace for making pig iron, coke ovens for making coke in said county, and operating a railroad, running same from its furnace to its mines, and running thereon lever or hand-cars, and also engines, cars and trains, which cars and engines were propelled by steam, on its railroad track from its said furnace to its said coal mines; and that on the date and year aforesaid, the plaintiff's intestate was hired by and was in the employ and service of the defendant as section foreman to work on said railroad and said railroad tracks; and that on one side of said track between said furnace and coal mine, and within a few feet of the said railroad track, there was then a continuous line of coke ovens extending for about 250 yards, then and there being operated by defendant; and that the smoke from said coke ovens when it was being blown by the wind towards, on or over said railroad track, was so dense that one on said railroad track and opposite to said ovens could not see a car, engine or train of cars approaching him on said track in time to avoid being injured by the same; and plaintiff says that on the day aforesaid, and while his intestate was employed as aforesaid, and was discharging the duties required of him in said employment, it became and was necessary for him, in performing his duties, to go on a hand-car on said railroad track with other employés of the defendant, from defendant's said coal mines to defendant's said furnace; and while plaintiff's intestate and other employés were on said hand-car, and it was on said railroad track and passing by and opposite said coke ovens, and when smoke from said coke ovens was being blown by the wind towards, on and over said railroad track, and said smoke was so dense that an engine or train of cars approaching them could not be seen by them in time for them to avoid being injured by the same, an engine and train of cars of defendant, propelled by steam on said railroad track, and coming from the opposite direction from that in which the plaintiff's intestate was going with said hand-

car, and without any signal of its approach being given, by ringing the bell or blowing the whistle or otherwise, struck said hand-car with great force and violence and thereby killed plaintiff's intestate.

"The plaintiff avers that the collision of said hand-car with said train and said death was caused by the negligence of the person in charge of the engine which was propelling said train, which collided with the hand-car upon which the plaintiff's intestate was riding, in this, that the person so in charge of said engine, had reason to believe that said hand-car, upon which plaintiff's intestate was riding, was likely to be moving in said smoke in the direction it was at the time it was on said track, and said person so in charge of said engine negligently failed to ring the bell on said engine or blow the whistle or give any other signals of his approach when entering the smoke which covered the track as aforesaid. And the plaintiff avers that the person so in charge of said engine was also in the service and employment of the defendant, and was at the time of the accident and injuries aforesaid in the discharge of his duty under such employment in operating and controlling said engine."

In the remaining counts, the prefatory averments as to the circumstances of the accident were substantially the same as those contained in the first. And the averments of negligence in each of said counts were as follows: Third count: "And the plaintiff avers that the collision of said hand or lever-car with said train was caused by the negligence of the person who was in charge of and operating said engine on defendant's said road, which collided with the said hand or lever-car upon which plaintiff's intestate was riding, in this, that said person, so in charge of said engine, negligently running said engine without due care into and through said smoke, and into and against the lever or hand-car upon which plaintiff's intestate was then riding, and the death of plaintiff's intestate was the result of said negligence of said person so in charge of said engine."

Seventeenth count: "And the plaintiff avers that the said intestate's death was caused by the negligence of a person who was also in the employment of the said defendant, and to whom the defendant had intrusted the superintendence of operating, running and controlling

this plant, viz., its iron furnace, its coke ovens, its ore and coal mines, and in operating and running the railroad trains passing from its furnace to its ore and coal mines, and of the operatives who had charge of said trains, in this, that said person who had such superintendence intrusted to him, well knowing that the smoke from said coke ovens would at times obscure the railroad track as aforesaid, negligently allowed or permitted the said persons or operatives running the trains of said defendant from its furnace to its mines and from its mines to its furnace, to run into and through said smoke or onto the said track where the smoke obscured the same, without giving proper signals or taking other necessary means of precaution to ascertain whether the said track was occupied by other persons in the employment of said defendant, and whether other trains or cars or handcars were upon said track; and plaintiff avers that said person having the superintendence intrusted to him as aforesaid was guilty of aforesaid negligence whilst in the exercise of said superintendence; and by reason of aforesaid negligence, plaintiff's intestate was killed, for which plaintiff claims damage as aforesaid.''

Twenty-third count: ''And the plaintiff avers that the collision of said engine and train with said handcar and the death of his intestate were caused by the negligence of the engineer in charge and control of said engine in this, to-wit, said engineer negligently ran said engine and train on said railroad track along, opposite and by said coke ovens and through said smoke without giving proper signals or warning while passing through said smoke of said engine and train; and the plaintiff avers that the said engineer was then and there in the employment of the said defendant and in charge and control of said engine.''

Twenty-fourth count: ''And the plaintiff avers that at the time the engineer in charge of said engine ran said engine and train into and through said smoke as aforesaid, he knew that said railroad track was obscured by smoke as aforesaid, and that a rule, regulation or custom then and there existed, which required all engineers of defendant, running an engine or engines and train on said railroad track along, opposite and by said coke ovens when said railroad track was obscured by smoke as aforesaid, to blow a whistle before entering

[Woodward Iron Co. v. Herndon, Adm'r.]

said smoke, and continue to blow the same at short intervals while passing through said smoke. And the plaintiff says that the engineer in charge and control of said engine, disregarding his duty in this behalf, failed to blow the whistle at short intervals while passing along, opposite and by said coke ovens, and through said smoke, and said collision of said engine and train and said handcar, and the death of the plaintiff's said intestate, were caused by the said negligence of the said engineer by failing to blow said whistle at short intervals as aforesaid, and that said engineer was then and there in the employment of the defendant and had charge and control of said engine."

Twenty-fifth count. The twenty-fifth count is identical in all respects with the twenty-fourth count.

To the above counts of the complaint, the defendant demurred. To the 1st count, the grounds of demurrer were as follows: 1. Because the allegation in that part of the first count charging negligence was that the engineer in charge of the engine had reason to believe that the hand-car was liable to be moving in the direction it was and at the time it was on said track, and that he negligently failed to ring the bell of the engine or blow the whistle. It fails to aver that the engineer had reason to believe that the hand-car would be at that time and place on said track and in said smoke. 2. Because the first count did not aver that the engineer knew that the hand-car was liable or likely to be at said place. 3. Because said count did not aver that the engineer had reason to believe the hand-car was likely or would probably be on said track at that time and place. 4. Because the negligence charged in said count was the failing to ring the bell or blow the whistle, and it did not aver that the engineer had cause for believing or knowing that the hand-car was liable or likely to be on said track.

To the third count, the grounds of demurrer were the same as those interposed to the first, and also the following ground: 6th. "Because said count avers that the engine was run without any signals of its approach being given by ringing the bell or blowing the whistle, and fails to aver that there was any rule or custom which required said engineer to ring his bell or blow his whistle, or give any other notice of the approach of the engine, or aver the fact which made it his duty to do so."

To the 17th count the grounds of demurrer were as follows : "1. Because said count does not aver that the person who is thereby charged to have been negligent was in the discharge of any duty under his service to or the employment of the defendant as master or employer. 2. Said count fails to designate or point out with suffi- cient certainty, either by name, or by otherwise describ- ing him, the person who is thereby intended to be charged with negligence. 3. Because said seventeenth count is double in its charges of negligence in this, that it avers that the negligence consisted in the superintend- ent allowing the trains to be operated without requiring persons so operating trains to have any schedule for running the same, and also that he negligently per- mitted them to run said train into and through said smoke without giving proper signals or other necessary signs of precaution, to ascertain whether said track was occupied by other persons in the employment of said defendant. 4. Because said seventeenth count and the negligence therein lastly averred fails to aver that the said train or car which came into collision with the hand- car on which the plaintiff's intestate was riding was run into said smoke without having given any signal or warning of the fact of its approach."

To the 23d, 24th and 25th counts, the grounds of de- murrer were as follows : 1. Because it fails to aver that the said engineer had any knowledge, notice or infor- mation that the hand-car would be on said track at said time and place. 2. Because it fails to aver that the engineer was at the time in the discharge of any duty under his employment by defendant. The court over- ruled each of the demurrers to the 1st, 3d, 17th, 23d, 24th and 25th counts.

The defendant pleaded the general issue and several special pleas, setting up contributory negligence on the part of the plaintiff's intestate which proximately contrib- uted to the injury resulting in his death. These pleas were substantially as follows : 2. The plea of contributory negligence, averring that the plaintiff's intestate was guilty of negligence, which contributed proximately to produce his injuries, in this, that the track of the rail- road along by the coke ovens was obscured by smoke blown toward and over it, and was so dense that one on said track at that point could not see a car, engine or

train approaching from the opposite direction in time to get off the track and avoid being injured by the same; that the said track at that place was obvious and plainly visible to the plaintiff's intestate, when approaching the coke ovens from the direction of Dolomite as soon as he had crossed the bridge on the railroad track that spans the creek about one hundred and fifty yards from the lower end of the coke ovens; and that the plaintiff's intestate, Neal, was in charge and control of the hand-car on which he was riding as boss or manager thereof, and continued to ride on said hand-car in said smoke and on said track through the smoke without stopping or causing to be stopped the hand-car; that the said Neal knew it was dangerous to continue to ride on said hand-car into said smoke, along, by and opposite to said coke ovens where the smoke obscured the track, and that that place was in the yard limits of the defendant's furnace where engines and cars were continually passing and repassing, shifting cars from one end of the yard to the other during the day and at all hours of the day; and that said Neal voluntarily caused the said hand-car to be propelled into said smoke, and that he, himself, rode into said smoke at the time he received said injuries.

3. Third plea was a plea of contributory negligence which was substantially the same as plea No. 2 above set out, except that it contained this additional averment: "Defendant avers that the danger was so great that a man with ordinary prudence would not have voluntarily incurred it." No demurrer was interposed to this plea.

The fourth plea as originally filed was as follows: "Fourth. Defendant pleads and says that the plaintiff's intestate was guilty of negligence which contributed approximately to produce the injuries which it is averred he received, in this, that the track of the said railroad along by the coke ovens was obscured by smoke from the coke ovens by its being blown by the wind toward and over the track of the said defendant's said railroad, and so dense that one on the railroad track at that point could not see a car or engine approaching in the opposite direction in time to get off of the track and to avoid being injured by the same; and that the condition of said track at that place was visible to the plaintiff's intestate ap-

[Woodward Iron Co. v. Herndon, Adm'r.]

proaching said coke ovens from the direction of Dolomite as soon as he had crossed the bridge on the railroad track that spans the creek about 150 yards from the lower end of the coke ovens, yet, that he, the said Neal, being in charge and control of the hand-car on which he was riding when he received his injuries, as the boss and manager of said hand-car and squad, continued to ride on said hand-car into said smoke and through said smoke on said track without stopping, or causing to be stopped, the hand-car; and that the said Neal knew it was dangerous to continue to ride on said hand-car into and through said smoke along, by and opposite said coke ovens where the smoke obscured the track; and that the said railroad track at that place was within the yard limits of the defendant's said furnace where engines and cars were continually passing and repassing, shifting cars from one track to another within the yard limits during the day and all hours of the day; and with such knowledge he, the said Neal, voluntarily caused the said hand-car to be propelled into said smoke, and himself, rode into said smoke without stopping to look, and without taking any steps of precaution whatever to ascertain whether an engine or train of cars was approaching from an opposite direction.''

A demurrer having been sustained to the fourth plea as set out above, it was amended and refiled as amended, and as amended, was the same as originally filed, except that the following words were added, to-wit: "Was such that it was obviously dangerous for any one to ride on the hand-car through said smoke which was,'' immediately after the words: "And that the said condition of said track at that place,'' and immediately preceding the words: "Visible to the plaintiff's intestate approaching said coke ovens from the direction of Dolomite.'' And as so amended, the demurrers were refiled to it, and overruled.

The 5th, 6th, 7th, 8th and 9th pleas set up as a defense to the action the contributory negligence of the plaintiff, averring the facts constituting such negligence as alleged in the other pleas, and further, that it was the custom of section foreman to send flagman ahead of their hand-cars when the track was covered with smoke as it was on the day of the accident complained of, but that plain-

tiff's intestate failed to observe this custom and take the reasonable precaution, and was injured by reason of such failure.

The plaintiff demurred to the defendant's pleas of contributory negligence, but the demurrers are said to have been lost or mislaid, and are not set out in the record. The court sustained the demurrers to pleas numbered 2 and 4, as the 4th plea was originally filed, and overruled the plaintiff's demurrers to the defendant's other pleas of contributory negligence. The fourth plea was then amended, as set out in this statement, and the demurrers being refiled to it as so amended were overruled by the court. Issue was then joined on the pleas of the general issue, and upon special pleas numbered 3 and 4 as amended, and those numbered 5, 6, 7, 8 and 9, and the cause was tried on the issue so formed.

The evidence showed that at the time of the accident complained of, the defendant was operating a furnace and in connection therewith coke ovens; and that for the purpose of carrying on its business, it operated a railroad from its furnace out to its mines, some several miles beyond a station called Dolomite; that the railroad track going to Dolomite runs along by the side of the coke ovens; that the coke oven battery, from the lower end to the upper end, is about 250 or 300 yards in length. That from the lower end of the coke oven, in the absence of smoke, a person could see beyond the upper end on to the office of the company, about 175 or 200 yards beyond the upper end of the ovens; that this distance is straight; that at the office there is a switch and side track from the main line; that about midway between the office and the upper end of the coke ovens, there is a tank, and just before reaching the tank, coming from the direction of the coke ovens, there is a side track leading toward the furnace; that when the wind is from a certain direction, smoke is blown from the coke ovens on to the track, and obscures it for the whole length of the coke oven battery, so that trains moving along the track at that place can not be seen for from 10 to 30 feet; that at the lower end of the coke ovens there is a curve in the railroad track, leading out to Dolomite; that on the morning of the accident resulting in the plaintiff's intestate's death, a coal train started from Dolomite to the defendant's furnace, which was followed by a hand-car; that upon this hand-car, the plaintiff's

intestate, who was the foreman of the track squad, was riding with the track men ; that the coal train preceded them, and that when the hand-car was about midway the length of the coke ovens, it collided with a switch engine used by the defendant in its yard, which was coming from the opposite direction ; and that in this collision the plaintiff's intestate received personal injuries from which he died.

The testimony for the plaintiff tended to show that Neal and his men on the hand-car, as they came on from Dolomite, kept close enough behind the coal train, which preceded them, to see it, up to a short distance of the coke ovens ; that at the lower end of the coke ovens there was a curve in the track, and after turning this curve, the coal train was never seen again, the smoke being so dense ; that there was but a few moments difference in the passage of the coal train and the hand-car ; that the hand-car was running about 10 or 12 miles an hour, trying to keep up with the coal train ; that the hand-car was not stopped and no flagman was sent out when they found the track was covered with smoke, because it was not deemed necessary when the hand-car was following so close upon the train ; that the whistle of the engine was not being blown, nor was the bell being rung as the train which collided with the hand-car passed through the smoke ; and that if this had been done, it would have notified the plaintiff's intestate of the approach of the engine, and he would have been able to have avoided the collision.

The testimony for the defendant tended to show that just before the accident, the engine which collided with the hand-car was standing at the side track near the office, waiting for the coming in of the coal train from Dolomite, which was due about that time ; that this train came up, switched cars upon the side track just below the tank, and then proceeded on the main line beyond the side track at the office upon which said train was standing ; that this consumed 8 or 10 minutes after it had passed the coke ovens ; and that as soon as the coal train had passed said engine, it moved down the track, at the rate of 10 or 12 miles an hour, on past the tank and was going through the smoke over the track at the coke ovens when it collided with the hand-car, about half way the distance of the coke ovens ; and that just after pas-

ing the tank the engineer blew his whistle, upon going into the smoke. There was testimony for the defendant that the whistle of the engine was being blown at short intervals and the bell was being rung the whole time it was passing through the smoke; while the evidence for the plaintiff upon this point was that about 50 yards before the smoke was entered, the engineer blew one long blast of his whistle, and then blew no more, nor rung the bell, up to the time of the accident. The evidence for the defendant further tended to show that it was the custom and habit of the track foreman, when the track at the coke ovens was covered with smoke, to stop his hand-car and send a flagman before him, in order to avoid collisions with switch engines, which were liable to be passing at any time; and that in this instance, there was no such flagman preceding the hand-car, and the engineer did not have warning of its approach.

Upon the examination of the witness, Jim Andrews, by plaintiff, he testified that he was one of the track squad at the time Neal was killed, and was himself on the hand-car and severely wounded in the accident; that some of the foremen of the hand-car squad, who preceded Neal, would sometimes stop the hand-car and send a man with a flag through the smoke, but sometimes they did not; that he remembered when this was done, but did not know how many times. This witness was then asked by the defendant: "Do you know why they did stop?" Plaintiff objected to this question, the court sustained the objection, and the plaintiff duly excepted.

Upon the examination of Frank Ritchie as a witness for the defendant, he testified that he was the engineer upon the engine which collided with the hand-car upon which deceased was riding, and that he had been in the employ of the defendant for a long time. This witness testified that when the wind was blowing, as it was the day of the accident, and the smoke from the coke ovens was covering the track, it was always a custom, ever since he knew the place, for the foreman on the hand-car to stop the car, and send a man ahead to flag. This witness was then asked by the defendant's counsel the following question: "Whether or not within your knowledge and recollection you ever remember to have seen a hand-car coming through that smoke, when the

condition of affairs existed as they did that day, without sending a flag through to protect it?" To this question plaintiff objected, which objection the court sustained, and the defendant duly excepted.

O. M. Rockett, a witness for the defendant, testified that he was in the employment of the defendant at the time the plaintiff's intestate was killed, and that it was a custom of the foreman of the hand-car squad to send a flagman ahead of the hand-car whenever the smoke was upon the track as it was the day that Neal was killed; and that he had been in the defendant's employ with Parsons, former foreman of the track hands, about a month, and had seen him stop the car and send flagmen before it. The plaintiff moved to exclude this statement as to the witness having seen Parsons send a flagman, which motion the court sustained, and the plaintiff duly excepted.

The defendant sought to prove by this witness the rules and customs of other railroads as to the right of way between trains and hand-cars; but upon the objection of the plaintiff the court disallowed such testimony, and to each of these rulings the defendant separately excepted.

This witness further testified that he had, at one time, been foreman of the track men, and had himself had to send flagmen ahead of the hand-car when the smoke was upon track, as it was the day of the accident. The plaintiff's counsel then asked this witness: "Did you ever follow a train through there that was coming from Dolomite?" The defendant objected to the question upon the ground that there is no replication on this point, and, further, because it is not shown "how far" behind the train. This objection was overruled by the court, and the defendant duly excepted. Then the question was repeated: "Did you ever follow close behind a train coming from Dolomite to the furnace?" And the witness answered: "No sir, I don't think I ever remember coming in right behind it; within sight of it part of the way, and sometimes out; don't know that I ever saw that done." Witness repeated that it was a custom to send the flagman through the smoke, and, being asked: "When you were following a train, is it not a fact that you did not send a flagman?" he said: "According to the way the smoke was;" and further said that he did not know that he ever followed one that

way ; but that he knew why they did it when the smoke
was on the track.

W. M. Owen, a witness for the defendant, testified
that he had been foreman of the track squad for the de-
fendant, and that it had been necessary for him to send
a flagman ahead of his hand car as he passed the coke
ovens when smoke was upon it as it was on the day of
plaintiff's intestate's death. On his examination in re-
buttal, the defendant asked the witness this question: "Mr.
White [plaintiff's counsel] asked you if while you were
there the men on the hand-car were not likely or liable
to be out any where on the road. I will ask you whether
or not when the smoke was thick on the track, obscuring
the track, was it liable or likely that the hand-car and
its gang were in that smoke without sending a man
ahead?" To this question the plaintiff objected on the
ground that the same calls for incompetent and irrevel-
ent testimony, and because it is not in rebuttal. The
court sustained the objection, and the defendant duly
excepted to the ruling of the court. And defendant's
counsel asked said witness this question : "Mr. White
asked you on cross-examination whether or not it was
not likely or liable that the hand-car and squad would
be anywhere on the road, when they were out working.
I will ask you whether or not that answer includes along
there in the smoke?" To this question the plaintiff
objected on the ground that the answer speaks for itself.
The court sustained the objection of the plaintiff, and
the defendant duly excepted. Said witness testified
that "when the smoke obscured the track in the way in
which it was obscured, it was likely or liable that the
hand car or its squad would be there at that place, pro-
vided there was a broken rail, or we had work there.
In case of an emergency or a wreck, we would be liable
to be there at work. A man is liable to be or go all over
his division, so far as work is concerned, at any time in
the day, wherever his work calls him. He is responsible
for the whole thing, for the whole road ; and wherever
his business calls him he is liable to go ; he is there for
that purpose ; it is his business to keep it up."

Upon the examination of R. C. White as a witness in
behalf of the defendant, he testified that he was a ma-
chinist, and had been employed by the defendant as
master mechanic, but was not in the employ at the time

time of giving his testimony. This witness testified that it was not possible to have a regular or fixed schedule for regular yard engines, such as the one which collided with the hand-car, and upon which plaintiff's intestate was killed; that he did not know anything about the movement of hand-cars, and did not know whether they should be run on schedule or not, but he supposed they could. This witness was then asked the following question: "Whether or not within your knowledge or experience you ever saw or heard of a hand-car being regulated by a schedule on this or on any other road." The plaintiff objected to this question, which objection the court sustained, and the plaintiff duly excepted. Defendant's counsel then asked said witness: "I will ask you whether or not it is usual or customary in the operation of hand-cars on railroads, hand-cars for the use of track gangs, to be run by any fixed schedule?" Plaintiff objected to this question, which objection the court sustained, and the defendant excepted. The witness was then asked by defendant's counsel: "Whether or not from your observation and experience in railroading on any well regulated railroad, the movements of any track gang, running on a hand-car, are governed by any fixed schedule?" To which he answered, that he never heard of any. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (a.) "If the jury believe the evidence, they must find in favor of the defendant upon the first count of the complaint." (b.) "If the jury believe the evidence, they must find for the defendant on counts numbered 23, 24 and 25 of the complaint." (c.) "If the jury believe the evidence, they must find for the defendant." (d.) "If the jury believe the evidence, the plaintiff's intestate was guilty of contributory negligence." (e.) "If the jury believe that on the day when the plaintiff's intestate received his injuries, the smoke in and along the track of the defendant's railroad along by its coke ovens was so thick and low on the track, that one at the lower end of the coke ovens could not see to the upper end of the coke ovens, and if they also believe from the evidence that

[Woodward Iron Co. v. Herndon, Adm'r.]

said Neal knew or was informed that the yard engine had no schedule for running about the yard, in switching cars to and from the coke ovens, and was likely or liable to be passing along down by the coke ovens at any time, then it was negligence in said Neal to cause the hand-car to be propelled through the smoke without sending some one ahead of it to protect it against collision with the yard engine." (f.) "If the jury believe from the evidence, that on the day plaintiff's intestate received his injuries, the smoke on and along by the coke ovens was so thick that the track opposite the upper half of the coke ovens couldn't be seen by persons on a hand-car when it came to the lower end of the coke oven battery; and if they believed that the said Neal knew or was informed that the yard engine, in switching cars to and from the coke ovens, was liable to be or likely to be passing along through at any time of day, and the hand-car was so far behind the coal train as that the said Neal could not see it, and could not tell how far ahead of the hand-car it was, then the court charges you that it was negligence in the said Neal to ride on said hand-car through the said smoke under the circumstances, without stopping and sending a flagman ahead to protect the hand-car from collision with the yard engine." (g.) "That if the jury believe from the evidence that the plaintiff's intestate was in the employment of the defendant, as foreman of the section squad, and that he knew or was informed that it was the duty of such section foreman, when running a hand-car on defendant's railroad, to look out for trains, and to keep out of the way of trains on said road, and that there was no schedule for running the road engine from the furnace to carry empty cars to the coke ovens, and on the day he got hurt the hand-car was so far behind the coal train, that the yard engine could and did pass along the track by the coke ovens before the hand-car got through the smoke, then the verdict of the jury must be for the defendant." (h.) "The court charges you that it was negligence for the foreman of the hand-car to cause it to be driven through the smoke along by the coke ovens, without sending a man ahead to protect it against collision with the yard engine, if the jury believe the hand-car was so far behind the coal train, when the hand-car entered the smoke at the lower end of the coke

ovens as that the said Neal could not see where the coal train was or see how far ahead of him it was, provided the jury further believe from the evidence that, at the time of passing the coke ovens the smoke was so dense and low on the track by the coke ovens that a person at the lower end of the coke ovens could not see through or up to the upper end of the coke ovens." (i.) "That although the jury may believe from the evidence that the engineer, Ritchie, did not blow the whistle after entering the smoke, and that he was negligent in not doing so; but if the jury further believes that Neal with his hand car had entered the smoke, without sending a flagman ahead, before Ritchie's engine entered it at the upper end, then the court charges you that Neal's being in the smoke without having sent a flagman ahead was not the result of or produced by such failure to blow the whistle, and that unless the collision was proximately caused by such failure to blow the whistle, although they may find that Ritchie was so negligent in not blowing the whistle, after he entered the smoke, plaintiff is not entitled to recover on any count of the complaint which relies on the negligence of Ritchie in so failing to blow the whistle."

There were verdict and judgment for the plaintiff, assessing his damages at $5,127.50. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JAMES E. WEBB, for appellant.—The court erred in overruling the defendant's demurrers to the 23d, 24th and 25th counts. There was no averment in the counts that the engineer was, at the time of the accident, in the discharge of any duty under his employment.—L. & N. R. R. Co. v. Bouldin, 110 Ala. 185; 2 Thompson on Negligence, 885.

2. The 17th count of the complaint was erroneous in that it failed to designate therein by name, or otherwise, who was the officer charged with negligence.—L. & N. R. R. Co. v. Bouldin, 110 Ala. 185; Southern R. Co. v. Cunningham, 112 Ala. 496; H. A. & B. R. R. Co. v. Dusenberry, 94 Ala. 413.

3. The pleas numbered 2 and 4 were not open to the demurrers interposed to them, and the court, therefore, erred in sustaining such demurrers.—Railway Co. v.

*Stanford*, 117 Ind. 266; *Birmingham R. & E. Co. v. Allen*, 99 Ala. 359; *L. & N. R. R. Co. v. Banks*, 104 Ala. 508; *Andrews v. R. R. Co.*, 99 Ala. 440; *Warden v. L. & N. R. R. Co.*, 94 Ala. 277; *Kean v. Rolling Mills*, 66 Mich. 277; Woods' Master & Servant, 386, 387; Leading Article, 3 Cen. Law Journal, 91.

4. The ruling of the court in excluding the answer of the witness Ritchie was erroneous. Such evidence was relevant and competent as going to sustain the 7th, 8th and 9th pleas, which averred a custom, when the smoke obstructed the track, to stop the car and send a flagman ahead for the protection of the workmen on the car.—*M. & O. R. R. Co. v. George*, 94 Ala. 199. If such custom was known to Neal, it was as obligatory on him to observe it as if it had been a rule of the defendant.—Bailey's Master & Servant, 76; Sherman & Redfield on Neg., §§ 207, 292, note 1. A custom is binding and must be observed unless it is contrary to some statute, or is sought to excuse negligence.—*M. & C. R. R. Co. v. Graham*, 94 Ala. 545; *Ga. Pac. R. Co. v. Propst*, 90 Ala. 3; *Pryor v. L. & N. R. R. Co.*, 90 Ala. 35; *L. & N. R. R. C. v. Watson*, 90 Ala. 69; 27 Amer. & Eng. Encyc. of Law, 899, 902, 903; *Whitsett v. Chicago, &c. R. Co.*, 67 Iowa 160; *Jeffrey v. K. & D. M. R. Co.*, 56 Iowa 546; *Kuhus v. Wisconsin, &c. R. Co.*, 70 Iowa 561; *Railroad Co. v. Manson*, 30 Ohio St. 468.

5. The court erred in sustaining objections to the questions propounded to witness Rockett.—*R. & D. R. R. Co. v. Hammond*, 93 Ala. 181; *George v. M. & O. R. R. Co.*, 109 Ala. 245; *Andrews v. Bir. M. R. R. Co.*, 99 Ala. 440; *Warden v. L. & N. R. R. Co.*, 94 Ala. 277; *R. R. Co. v. Burton*, 97 Ala. 240; *A. G. S. R. R. Co. v. Hill*, 100 Ala. 447.

6. The court erred in refusing to give the charges requested by the defendant which presented the question of the plaintiff's intestate's contributory negligence. The question of negligence *vel non* is one of law to be decided by the court, where the facts are undisputed and the inferences to be drawn from them is clear and certain.—*Lanier v. Youngblood*, 73 Ala. 587; *Southern R. Co. v. Cunningham*, 112 Ala. 496; *A. G. S. R. R. Co. v. Jones*, 71 Ala. 487; *E. T., V. & G. R. R. Co. v. Bayliss*, 74 Ala. 150; *L. & N. R. R. Co. v. Richards*, 100 Ala. 367; Beach on Contrib. Neg., § 162. There was no

dispute upon the facts tending to show Neal's negligence. The danger was apparent to him; and his failure to stop the hand-car before proceeding through the smoke without sending a flagman ahead, or to take other steps of precaution for his safety, was clearly negligence. It, therefore, became a matter of law for the court to so instruct the jury.—*L. & N. R. R. Co. v. Banks*, 104 Ala. 508. Nor was the plaintiff's intestate's negligence diminished or excused by the negligence of those who served the defendant in the same capacity as did the intestate.—*George v. M. & O. R. R. Co.*, 109 Ala. 245; *Andrews v. R. R. Co.*, 99 Ala. 440; *Warden v. R. R. Co.*, 94 Ala. 277; *K. C., M. & B. R. R. Co. v. Burton*, 97 Ala. 258.

7. The court erred in refusing to give for the defendant the charge marked (i.) That charge asserts the proposition, although Ritchie may have been negligent as averred in some one or more of the counts of the complaint, which aver the negligence of Ritchie consisted in his failing to blow the whistle after he entered the smoke, yet if to such negligence of Ritchie is not attributable proximately the accident to Neal, or in other words, if Neal's negligence did not cause Neal's injuries, then the plaintiff could not recover under any count which relied on that particular negligence of Neal. The same proposition otherwise stated is this: That if Neal entered the smoke before Ritchie did with his engine, then Neal's presence in the smoke and getting hurt there cannot be attributed to or said to have been caused by Ritchie's failure to blow his whistle after Ritchie got into the smoke; because under the hypothesis of the charge Neal was in the smoke before Ritchie. Negligence is not actionable unless it proximately causes the "plaintiff's injuries."—1 Sherman & Redfield on Negligence, §§ 25, 26; *Harlan v. R. R. Co.*, 65 Mo. 22; *M. & O. R. R. Co. v. George*, 94 Ala. 200; *Western R. of Ala. v. Mutch*, 97 Ala. 194; *Gadsden, &c. R. R. Co. v. Causler*, 97 Ala. 236. But the charge marked (i,) was, furthermore, correct, because it says "and that unless the collision was proximately caused by such failure to blow the whistle;" meaning thereby a failure to blow the whistle after he entered the smoke, "plaintiff is not entitled to recover on any count which

relies on the negligence of Ritchie after he entered the smoke."—Authorities *supra*.

ARNOLD & EVANS and LANE & WHITE, *contra.*—1. It can not be assumed that Neal was guilty of negligence, or that the danger of going through the smoke on the hand-car was so great that a reasonably prudent man would not have attempted to do so. These questions were for the jury—questions upon which different minds might reasonably draw different conclusions. *Eureka Co. v. Bass*, 81 Ala. 200 ; Wood's Master & Servant, (2d ed.), §§ 387, 388 ; *Patterson v. R. R. Co.*, 18 Amer. Rep. 412 ; *Hawley v. R. R. Co.*, 82 N. Y. 370 ; 14 Amer. & Eng. Encyc. of Law, 844, 846, note 848 ; note 869.

2. The plaintiff's intestate had the right to rely upon the known rules and customs of the defendant, and in doing so, he could not be charged with negligence.—*R. R. Co. v. Walters*, 91 Ala. 435 ; *R. R. Co. v. Jacobs*, 101 Ala. 149 ; *Ga. Pac. Railway Co. v. Davis*, 92 Ala. 300 ; 14 Amer. & Eng. Encyc. of Law, 843, 855.

3. The 17th count of the complaint was not erroneous in that it failed to designate by name, or otherwise the person who was thereby entitled to be charged with negligence.—*L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241 ; *L. & N. R. R. Co. v. Mothershed*, 97 Ala. 261 ; *McNamara v. Logan*, 100 Ala. 187.

4. There was no error in the court sustaining demurrers to the pleas numbered 2 and 4. But if there was error, in sustaining these demurrers to these pleas or to either of them, it was error without injury, because the abstract shows that on the trial, under the general issue and these two pleas as amended, and other special pleas, appellants had the full benefit of the matters pleaded in these two pleas, and the amendments made did not change the degree of proof required.—Code of 1886, § 2692 ; *Manning v. Maroney*, 87 Ala. 563 ; *L. & N. R. R. Co. v. Davis*, 91 Ala. 487 ; *R. R. Co. v. Trammell*, 93 Ala. 350 ; *R. R. Co. v. Higdon*, 94 Ala. 286.

5. It is not, as a matter of law, *per se* negligent for an employé to engage in dangerous work.—*R. R. Co. v. Holborn*, 84 Ala. 133 ; 14 Amer. & Eng. Encyc. of Law, 869. Assuming ordinary risks by the employé does not relieve the employer from reasonable care, and if the

risks are incurred by his negligence, he is liable.—14 Amer. & Eng. Encyc. of Law, 855, and note; *Flynn v. R. R. Co.*, 47 Amer. Rep. 99; *Wedgwood v. R. R. Co.*, 41 Wis. 478. Section 2590 of the Code changes the common law rule about employés assuming ordinary risks, when injury is caused by the negligence of one of the persons named in the statute.—*R. R. Co. v. George*, 94 Ala. 199; *R. R. Co. v. Holborn*, 84 Ala. 133; *Wilson v. R. R. Co.*, 85 Ala. 269. It is the duty of the employer not only to make but to enforce rules and regulations for the protection of his employés, in the conduct of his business; and if he fails to do so, it is negligence, and he is liable therefor—14 Amer. & Eng. Encyc. of Law, 886, 907, 908; *Railway Co. v. Taylor*, 18 Amer. Rep. 626; *R. R. Co. v. George*, 71 Amer. Dec. 239; *R. R. Co. v. Richardson*, 100 Ala. 232. An employé may rely to some extent on the judgment and care of his employer. He is not bound to set up his judgment against that of his employer. If an employer does not consider a defect or condition dangerous, the employé may generally disregard it, without losing his right to complain, if injured, while pursuing his ordinary course.—*R. R. Co. v. Burton*, 97 Ala. 258; *Snow v. R. R. Co.*, 85 Amer. Dec. 731; *R. R. Co. v. Ogden*, 3 Col. 504; *Hawley v. R. R. Co.*, 82 N. Y. 370; *Patterson v. R. R. Co.*, 18 Amer. Rep. 412.

McCLELLAN, J.—An engineer, who is in the employment of a railway company and in charge and control of an engine, which he is at the time running over a track of the company, is *prima facie* in the discharge of his duties as engineer under such employment.

Moreover, counts 23, 24, and 25 of the complaint pursue the language of the statute in the respect under consideration: Liability is by the act made to rest upon the employer for an injury resulting from the negligence "of any person in the service or employment of the master or employer, who has charge or control of any signal points, locomotive, engine, switch, car, or train upon a railway, or of any part of the track of a railway." Code, § 2590, subdiv., 5.

The court, therefore, properly overruled the demurrer to these counts which proceeded on the assumption that it was necessary for them to aver that the engineer was

at the time of the injury in the discharge of the duties imposed by his employment.

The averment of negligence in the 17th count is not duplex, as insisted by the demurrer thereto. The negligence counted on is that of the person intrusted with superintendence in allowing or permitting trains to be run along a track obscured by smoke without requiring precautions to be taken by those in charge thereof to warn persons on the track—other employés of defendant—of their approach. "Proper signals" and "other necessary means of precaution," to this end; are but one and the same thing, viz., the steps dictated by due care and prudence to give notice of the approach of trains which could not be seen because of the dense smoke.

The other ground of demurrer to the 17th count is that the count, which claims for the negligence of a person having superintendence intrusted to him by the employer, whilst in the exercise thereof, fails to aver the name of such person, or that his name is unknown to the plaintiff.

In *McNamara v. Logan*, 100 Ala. 187, it was held to be unnecessary in a count under sub-section 1 of section 2590 to aver the name of the person intrusted by the employer with the duty of seeing that the ways, works, machinery and plant of the employer were in proper condition. Through inadvertence and because of not recalling at the moment the considerations upon which that ruling was rested, it was said in the opinion in *L. & N. R. R. Co. v. Bouldin*, 110 Ala. 185, that a count under sub-section 1 of section 2590 should aver the name of the person charged with negligence in respect of the condition of the ways, works, machinery and plant of the defendant. We are satisfied with the contrary ruling in *McNamara v. Logan, supra*, for the reasons there given, and the case of *L. & N. R. R. Co. v. Bouldin*, so far as it conflicts therewith, must be overruled. It was also held in the case last mentioned that a count, going upon the negligence of a person intrusted with superintendence under the second clause of section 2590, should aver the name of such person, and upon the considerations which led to the rulings in the cases of *M. & O. R. R. Co. v. George*, 94 Ala. 199; *George v. M. & O. R. R. Co.*, 109 Ala. 245, and *So. Railway Co. v. Cunningham*, 112 Ala. 496, we now adhere to that view, and hold that the de-

[Woodward Iron Co. v. Herndon, Adm'r.]

murrer to the 17th count for its failure to aver the name of the superintendent whose negligence is relied upon, or plaintiff's ignorance thereof, should have been sustained.

The action of the court in sustaining a demurrer to the second plea will not be reviewed. In the first place, the demurrer is not in the record, and, of course, the grounds assigned are not stated in the abstract. In the second place, the defendant had the full benefit of the facts laid in this plea on the trial under other pleas.

Defendant was not prejudiced by the action of the court in disallowing the question to the witness Andrews : ''Do you know why they did stop?'' This question was fully answered by this witness in other parts of his testimony. The same may be said with respect to the exclusion of the question to the witness Ritchie as to whether a hand-car had ever before been run through the smoke without stopping and sending a flagman forward, and of the exclusion of the testimony of the witness Rockett, that he had been there with Parsons for about a month, and had seen him stop and send a flagman through the smoke.

The rules and customs obtaining on other railroads as to the right of way between trains and hand cars were not pertinent to any issue in this case. No question was involved here as to such right of precedence, but the trial proceeded upon the assumption that the train which collided with the hand-car, on which plaintiff's intestate was riding, had the right of way over the hand-car. The issue upon the one hand, was whether those in charge of the train exercised this unquestioned right in a careful and prudent manner, and, upon the other, under the plea of contributory negligence, whether those in control of the hand car had a right to assume, under all the circumstances, that no train was approaching through the smoke. No injury could possibly have resulted to the defendant from the exclusion of this impertinent testimony.

The question to the witness Rockett : ''Did you ever follow a train through there that was coming from Dolomite?'' objected to by the defendant, was not answered. The question : ''Did you ever follow close behind a train coming in from Dolomite to the furnace?''

which was answered, was not objected to. Moreover, the answer was favorable to the defendant.

It does not appear from the abstract that plaintiff elicited any testimony from defendant's witness Owen to the effect that the men with the hand-car were likely or liable to be out anywhere on the road, though a question calculated to draw out such testimony, if the facts admitted of it, was assumed in the question put to this witness on the rebutting examination by the defendant. The objection interposed to defendant's question as to whether these men were likely or liable to be in the smoke without making their presence known by sending a man ahead, on the ground that the proposed evidence was not in rebuttal of anything adduced on cross-examination, was, therefore, properly sustained.

Conceding that the impracticability of running hand-cars used by track men on stated schedule was a fact material to be proved, all of the testimony of the witness White which was competent on that inquiry was allowed to go to the jury. That part of it which was excluded was obviously inadmissible.

The first count charges that the engineer was negligent in failing to ring the bell or blow the whistle "when entering the smoke which covered the track." This averment finds support in the testimony of several witnesses, going to show that the only signal given at all was given when the engine was distant fifty yards or more from the smoke. The blowing of the whistle at such distance can not in any accurate sense be said to be the giving of a signal of alarm "when entering the smoke." The court, therefore, properly refused to give the affirmative charge on this count of the complaint.

Other counts of the complaint rely upon the failure of the engineer to ring the bell, blow the whistle, &c., at short intervals while passing through the dense smoke, which covered and obscured the track for 250 or 300 yards, embracing the point of collision between his train and the hand-car on which plaintiff's intestate was riding. Whether the engineer was remiss in this respect the evidence was conflicting. The question was, therefore, for the jury. There can, we think, be no doubt that such omission, under the circumstances shown in the evidence, if the jury found such to be the fact, was negligence on the part of the engineer. And this negli-

[Woodward Iron Co. v. Herndon, Adm'r.]

gence was not rendered innocuous by the mere fact that the hand-car, entering the opposite side, was in the smoke before the engine reached it.   Notwithstanding such a state of facts, it may well be that Neal and his companions might yet have escaped upon being warned of the danger  threatening them by signals from the engine as it came meeting them through the smoke.   The charge marked (i), of the defendant's series, was, therefore, properly refused.

The issue of contributory negligence *vel non* was an important one on the trial, and the action of the court below on requests for instructions by the defendant, presents for our consideration whether plaintiff's intestate was as matter of law, guilty of negligence which proximately contributed to his own injury and death. He was the foreman of the track men who were using the hand-car, and as such had charge and control thereof when it was run into the smoke where the collision occurred. The place of the collision, its character, the uses to which the tracks along there were put, being within the yard of defendant, the distance from the scene of the accident to the point whence the train which ran over the hand-car started, the location of the side track between said point and the smoke covering the track on which the collision occurred, and, in short, a full description of the scene of the catastrophe, will appear from the report of the case.   Having reference to that, we are now to declare the law of contributory negligence applicable to the several phases of the evidence as to the conduct of the intestate on the occasion of his death ; or, rather, as to the situation with reference to which his conduct is to be measured, for there is no conflict or contrariety of evidence.as to what the conduct of the intestate was :   He went at great speed into the smoke without stopping to ascertain or assure in any way the safety of so doing. We do not doubt in view of the uses to which the track at the time obscured by the smoke was put, the liability or likelihood of the presence of an engine there at any time, Neal's knowledge of the situation, &c., &c., that his conduct in plunging headlong into this volume of of smoke extending for 250 or 300 yards along the track and totally obscuring it, was negligence *per se*, and to be so declared by the court, unless his conduct is relieved in this respect by his proximity to the train which preceded

him into the smoke. If there had been no such train, his duty was clear, to stop his hand-car before entering the smoke and send a flagman forward through the smoke to prevent any engine or train coming down the track until the hand-car had passed through the smoke. Failing this would be negligence as a matter of law. On the other hand, it is, we think, equally clear that to have run a hand-car into the smoke so closely behind a train as that the latter would perform all the functions of a flagman sent forward, and prevent another train from coming down the track before the hand-car reached a place of safety, would not be negligence at all, nor any evidence of negligence. The real facts of the case seem to lie between these extremes. There was a train which preceded the hand-car through the smoke, but the hand-car was not sufficiently close behind the train as to get through the smoke before the train had taken a side track several hundred yards beyond the smoke, and thus made way for another train to come down on the main track into the smoke before the hand-car had emerged from it. If the hand-car was so far behind the train at the time the latter entered the smoke as that there was time for said train, at the speed it was known by those on the hand-car to be running, to reach and take the side-track beyond the smoke, and for the other train to come thence down the track at the speed it was accustomed and required to run, that is, at the rate of only two or three miles an hour, and meet the hand-car in the smoke, we do not hesitate to say, that plaintiff's intestate was guilty of negligence which proximately contributed to his death in following the first mentioned train into the smoke at such a distance behind it. The evidence as to the distance between the incoming train and the hand-car following it at the time the former entered the smoke was conflicting; and there was evidence tending to show that the train which struck the hand-car started down the track from a point several hundred yards beyond the smoke immediately the incoming train arrived and went onto the side-track, and that it proceeded down the track and into the smoke at a speed of from eight to twelve miles an hour; a great deal faster than it was accustomed and required to run along there. If the jury found this to be the fact, and further that but for this unusual rate of speed of the down-coming

train the hand-car would have gotten through the smoke and to a place of safety, or where a probable collision could have been foreseen and avoided, before the train entered the smoke, the question of negligence *vel non* on the part of the plaintiff's intestate, in entering the smoke thus behind the incoming train, was one of fact for the jury, and not one of law for the court. We would not say as matter or conclusion of law that the intestate was guilty of negligence proximately contributing to his death, if, knowing the usual rate of speed of the yard engine to be two or three miles an hour, he reached the smoke sufficiently near behind the incoming train to have gotten through it in time to avoid a collision with any train that might be coming down the track had such train moved at its customary speed. There might well be two opinions or conclusions upon that inquiry on all the evidence in the case ; and it was, therefore, for the determination of the jury.

Under the foregoing views of the case, charge (e) requested by the defendant was properly refused, because it pretermits all reference to the incoming train which the hand-car was following ; charge (g), because it fails to take into account the evidence tending to show that the yard engine and train came down the track much more rapidly than was customary, and much in excess of the prescribed rate of speed ; charge (h), because there was evidence in the case from which it was open to the jury to infer that Neal knew how close his hand-car was to the incoming train when the latter entered the smoke, though he could not see it at that particular time because of the intervention of a curve and an embankment between him and the train at a point just short of the smoke, and the charge would have taken the consideration of this evidence from the jury ; and charge (i), because it takes away from the jury the right to consider the evidence tending to show that Neal was close enough to the incoming train to have gotten through the smoke without injury had the other train been run at its usual speed. But charge (f) refused to the defendant should have been given. It postulates that Neal did not see and could not know how far the incoming train was ahead of his hand-car when he entered the smoke. If the jury found this to be a fact, as they might have done, their further conclusion should have been that he was guilty

[Estes *et al.* v. Bridgforth.]

of negligence in not stopping before entering the smoke and sending a flagman forward.

For the errors committed by the trial court, in overruling the demurrer to the 17th count and refusing charge (f) asked by the defendant, the judgment must be reversed. The cause is remanded.

Reversed and remanded.