# Woodward Iron Co. *v.* Herndon, Admr.

*Action against Employer by Administrator of deceased Employee to recover Damages for alleged negligent killing.*

1. *Action for negligence; when question of contributory negligence one for jury and not for the court; case at bar.*—In an action by an administrator of a deceased employee of defendant to recover damages for the death of his intestate, which was caused by defendant's switch engine colliding with one of its hand-cars upon which plaintiff's intestate was riding, the following facts were shown: Within the defendant's yards one of its tracks ran along by the side of a battery of coke ovens, the smoke from which often covered the said track, and at the time of the collision totally obscured it for the whole length of the battery, a distance of 250 or 300 yards. The switch or yard engine was used in switching cars to and from the coke ovens, and had no schedule for running about the yard, but was likely to be passing on the track by the coke ovens at any time, and these facts were known to plaintiff's intestate, who was in defendant's employment as foreman of the track men. Plaintiff's intestate, with the section hands, who had been at work on defendant's road leading out to one of its mines, boarded the hand-car immediately after one of defendant's coal trains passed

[Woodward Iron Co. v. Herndon, Admr.]

going to the yard and followed said train in. Just before reaching the smoke that covered the track on which the incoming train and the hand-car were to pass, there was a curve in the track and an embankment, which prevented the plaintiff's intestate from seeing said train, and said train passed out of sight, went through the smoke and onto another track, beyond the coke ovens. The yard engine, which was, beyond the switch at which the coal train passed to the side track from the track by the coke ovens, came down the track for the purpose of switching cars onto the track covered and obscured by smoke, and when about midway the length of the coke oven battery, it collided with the hand-car on which plaintiff's intestate was riding. The hand-car was running at 10 or 12 miles an hour and plaintiff's intestate did not stop it on entering the smoke, or send a flagman forward through the smoke to give warning if its approach. The evidence as to the distance between the incoming train and the hand-car following it, at the time the former entered the smoke, was conflicting; but there was evidence from which the jury could infer that plaintiff's intestate knew how close the hand-car was to said train. There was also evidence tending to show that the engine which collided with the hand-car started down the track immediately after the incoming train went onto the other track, and proceeded down the track into the smoke at a speed of from 8 to 12 miles an hour, which was a great deal faster than it was accustomed or required to run along there; and if said engine had come down the track at the speed of two or three miles an hour, which it was accustomed to do, the hand-car would have gotten through the smoke to a place of safety, or where a probable collision could have been averted. *Held*: The question of plaintiff's intestate having been guilty of negligence which proximately contributed to his injury was one of fact for the jury; and that, therefore, charges to the jury which pretermit all reference to the incoming train which the hand-car was following, or which ignore the evidence tending to show that the yard engine came down the track much more rapidly than was customary and much in excess of its prescribed rate of speed, or which take from the consideration of the jury the evidence from which they could have inferred that the plaintiff's intestate knew how close his hand-car was to the incoming train when the latter entered the smoke, or which deprive the jury of the right to consider the evidence tending to show that plaintiff's intestate was close enough to the incoming train to have gotten through the smoke without injury, if the yard engine had been run

[Woodward Iron Co. v. Herndon, Admr.]

at its usual speed, and which, without submitting the consideration of such tendencies of the evidence, instruct the jury as matter of law that plaintiff's intestate was guilty of contributory negligence, are erroneous and properly refused.

2. *Same; same.*—In such a case, a charge which instructs the jury that if the plaintiff's intestate at the time of the collision knew or was informed that the switch engine was liable to be passing along the track where the smoke was, at any time of the day, and did not see and could not know how far the incoming train was ahead of the hand-car when he entered the smoke, then plaintiff's intestate was guilty of contributory negligence in not stopping before entering the smoke and sending a flagman forward, asserts a correct proposition of law and should have been given.

3. *Same; same; when general affirmative charge properly refused.* In such a case, the fact that on the side of the track on which the hand car was approaching there was a track upon which the switch engine might have been standing, and from which it might have gone onto the main track as soon as the incoming train passed, and gone immediately into the smoke, from which a collision would have resulted, is not sufficient to authorize the giving of the general affirmative charge in behalf of the defendant. Inasmuch as the switch engine was not on that side track, if plaintiff's intestate was guilty of negligence only by relation to that track and a likelihood that the switch engine would be on it, such negligence did not contribute to his death.

4. *Same; same.*—In such a case, a charge which pretermits any reference to the unusual speed of the switch engine in going down to or into the smoke, is erroneous and properly refused.

5. *Same; same*—In such a case, a charge which instructs the jury that "If you believe from the evidence that the switch engine at and before the collision was running at its customary speed, you must find for the defendant," asserts a correct proposition and should be given.

6. *Pleading and practice; preparation of bill of exceptions.*—In the preparation of the bill of exceptions the evidence adduced and its tendencies should be set out in narrative form, and the provision of the rule that bills of exceptions should contain a statement of the testimony *in extenso* when the general affirmative charge has been asked, does not contemplate or authorize the setting forth therein of the stenographic report of questions and answers, but only that the testimony shall be stated in full and in narrative form; and, therefore, when in the preparation of a bill of exceptions there is a

[Woodward Iron Co. v. Herndon, Admr.]

palpable disregard of the rule by setting forth therein a stenographic report of the questions and answers of witnesses, making the bill of exceptions unduly prolix, it should be stricken from the record.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was an action brought by the appellee, Thomas H. Herndon, as the administrator of the estate of J. V. Neal, deceased, against the appellant, the Woodward Iron Company; and sought to recover damages for the alleged negligent killing of plaintiff's intestate. The complaint contained many counts. In some of the counts the negligence complained of was that of the engineer in charge of a switch engine operated in the yard of the defendant, in failing to ring his bell or blow his whistle as said engine, which was propelling a car in front of it, passed along the track of the defendant by the side of which were coke ovens and from which coke ovens a dense smoke covered the track, which made it impossible to see an object on the track even a few feet distant. In other counts of the complaint the negligence complained of was that of the superintendent in failing to keep a flagman along the portion of the track where the collission occurred, and which was covered by the dense cloud of smoke.

It was shown that the accident occurred on January 11, 1894. At that time the defendant was engaged in manufacturing pig iron, and in connection with his business was operating coke ovens and operating a railroad from its furnace to its coal mines, and that on said railroad there were run lever or hand cars and also engines, cars and trains. The plaintiff was employed by the defendant as a section foreman of a squad of hands engaged in track repairing. On the day of the accident a train operated on the road of the defendant came from the mines to the furnace. This was about 12 o'clock in the day. Just behind this train, the plaintiff's intestate and his squad of hands were on a lever or hand car going into the furnace, as there was some evidence tending to show, was their custom at that time of the day. Along the side of the track upon which the train and hand car were going into

the defendant's yard at the furnace, there was a battery of coke ovens, the smoke from which often covered the track, and at the time the accident happened, the smoke was so dense that it totally obscured the track for a distance of two or three hundred yards. Just before reaching the smoke that covered the track, on which the incoming train and the hand car would pass, there was a curve in the track and an embankment, which prevented the plaintiff's intestate from seeing said train, and the train passed through the smoke on to another track beyond the coke ovens. That at this time the switch engine, pushing a gondola or flat car, came from a side track on to the main track on which the incoming train had passed and the hand car was approaching, and started through the smoke. That said switch engine had passed about half the length of the battery of coke ovens when it collided with the hand car on which the plaintiff's intestate was riding and in such collision the plaintiff's intestate was killed.

There was evidence tending to show that the hand car was running at the rate of ten or twelve miles per hour, and that the switch engine at the time of the collision had attained a speed of from eight to ten miles an hour, but that the proper and customary speed for the switch engine at the place of the collision was two or three miles an hour.

There was evidence tending to show that defendant's train were run in the yard without schedule, and that the engine which collided with the hand car started down the track immediately after the incoming train went on to the other track, and that if said engine had come down the track at the speed of two or three miles an hour the hand car would have gotten through the smoke to a place of safety, or where the collision would have been averted.

The testimony as to the distance between the incoming train and the hand car following it, at the time the train entered the smoke, was conflicting, but there was some evidence tending to show that the plaintiff's intestate knew how close the hand car was to said train. The present is the second appeal taken in this case. (*Woodward Iron Co. v. Herndon*, 114 Ala. 191.)

The facts of the case on the present appeal are sub-stantially the same as those adduced on the other trial, and special reference is here made to the statement as contained in the report of the case, and it is, therefore, unnecessary to set out at length the facts aduced on the present trial. The bill of exceptions is very long and contains a stenographic report of the evidence in the case.

Upon the introduction of all the evidence the defendant requested the court to give, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "I charge you if you believe the evidence that your verdict must be for the defendant." (6.) "If you believe from the evidence that when the hand car reached the dense smoke the coal train had gone entirely through the dense smoke and had gone beyond the nearest switch to the end of the coke ovens nearest the office, you must find for the defendant." (7.) "If you believe from the evidence that when the coal train was about 140 yards from the dense, thick smoke, the hand car was about 470 yards behind the coal train, that at such time the hand car was running at the rate of about ten miles an hour and the coal train was then running at the rate of about ten miles an hour, and if you further believe from the evidence that it was about 140 yards through this dense, thick smoke, then I charge you that you must find that Neal was guilty of negligence in not stopping the car and in not sending a flagman ahead of the hand car through the smoke, and you must find for the defendant." (8.) "That if the jury believe from the evidence that the plaintiff's intestate was in the employment of the defendant as foreman of the section squad and that he knew or was informed that it was the duty of such section foreman when running a hand car on the defendant's railroad to look out for the trains and keep out of the way of trains on said road, and that there was no schedule for running the road engine from the furnace to carry empty cars to the coke ovens, and on the day he got hurt the hand car was so far behind the coal train that he yard en-

[Woodward Iron Co. v. Herndon, Admr.]

gine could and did pass along the track by the coke ovens before the hand car got through the smoke, then the verdict of the jury must be for the defendant." (9.) "If you believe from the evidence that the switch engine was liable or likely to get on the main track through a switch about twenty-three feet from the edge of the thick, dense smoke, nearest to the office, I charge you that Neal was guilty of negligence if he did not consider this in determining the necessity of stopping the hand car and sending a flagman ahead through the smoke." (10.) "If you believe from the evidence that the switch engine at and before the collision was running at its customary speed you must find for the defendant." (11.) "If you believe from the evidence that the switch engine at and before the collision was running at a speed not greatly in excess of the usual and customary rate of running the switch engine, you must find for the defendant." (12.) "I charge you, gentlemen of the jury, that if you believe the evidence in this case, you must find that Neal was negligent in attempting to run the hand car through the smoke without taking precaution against engines and trains coming through the smoke from the opposite direction." (13.) "I charge you, gentlemen of the jury, that if you believe from the evidence that Neal did not know the speed at which the coal train was running you must find for the defendant." (14.) "If you believe from the evidence that when the hand car was at the L. & N. crossing the coal train was going out of sight of those on the hand car and into the smoke, that at the same time the hand car was about 470 yards behind the coal train, and if you further believe from the evidence that the coal train was about 140 yards from the thick, dense smoke, you must find for the defendant." (15.) "If you believe from the evidence that at the time the coal train entered the thick, dense smoke the hand car was 300 yards or more behind the coal train, you must find for the defendant." (16.) "If you believe from the evidence that when the hand car entered the thick, dense smoke the coal train had gone entirely through it, you must

find for the defendant." (17.) "If you believe from the evidence that the thick smoke extended in the direction toward the office to a point within twenty-three feet of where a side track connected by means of a switch with the main track, that the switch engine was liable and likely to be standing on this side track near this switch and ready to go on the main track and down in the smoke towards Dolomite as soon as the coal train passed the switch, and if you further believe from the evidence that the collision occurred about eighty yards down into the smoke, you must find for the defendant." (18.) "If the jury believe the evidence, the plaintiff's intestate was guilty of contributory negligence." (19.) "If the jury believe that on the day when plaintiff's intestate received his injuries the smoke in and along the track of the defendant's railroad along by its coke ovens was so thick and low on the track that one at the lower end of the coke ovens could not see to the upper end of the coke ovens, and if they also believe from the evidence that said Neal knew or was informed that the yard engine had no schedule for running about the yard in switching cars to and from the coke ovens and was likely or liable to be passing along down by the oven at any time, then it was negligence in said Neal to cause the hand car to be propelled through the smoke without sending some one ahead of it to protect it against collision with the yard engine." (20.) "The court charges you that it was negligence for the foreman of the hand car to cause it to be driven through the smoke along by the coke ovens without sending a man ahead to protect it against collision with the yard engine, if the jury believe the hand car was so far behind the coal train when the hand car entered the smoke at the lower end of the coke ovens, as that the said Neal could not see where the coal train was or see how far ahead of him it was, provided the jury further believe from the evidence that at the time of passing the coke ovens, the smoke was so dense and so low on the track by the coke ovens that a person at the lower end of the coke ovens could not see through or up to the upper end of the coke ovens." (21.) "If the jury believe from the evidence that on the day the

plaintiff's intestate received his injuries, the smoke on along and by the coke ovens was so thick that the track opposite the upper half of the coke ovens could not be seen by persons on the hand car when it came to the lower end of the coke oven battery; and if they believe that the said Neal knew or was informed that the yard engine, in switching cars to and from the coke ovens, was liable to be or was likely to be passing along through at any time of day, and the hand car was so far behind the coal train as that the said Neal could not see it, and could not tell how far ahead of the hand car it was, then the court charges you that it was negligence in said Neal to ride on said hand car through said smoke under the circumstances, without stopping and sending a flagman ahead to protect the hand car from collision with said yard engine."

There were verdict and judgment for the plaintiff, assessing his damages at $6,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WALKER, PORTER & WALKER, for appellant, cited *Woodward Iron Co. v. Herndon*, 114 Ala. 220; *L. & N. R. R. Co. v. Davis*, 99 Ala. 593; *Tenn. C., I. & R. R. Co. v. Herndon*, 100 Ala. 451; *Homan v. Stewart*, 103 Ala. 645; *A. G. S. R. R. Co. v. Hall*, 105 Ala. 599; *L. & N. R. R. Co. v. Binion*, 107 Ala. 645; *A. G. S. R. R. Co. v. Bailey*, 112 Ala. 167.

GEORGE A. EVANS and LANE & WHITE, *contra*, cited *Woodward Iron Co. v. Herndon*, 114 Ala. 219; *Helton v. Ala. Mid. R. R. Co.*, 97 Ala. 275; *Anderson v. Timberlake*, 114 Ala. 377; *Ala. Min. R. R. Co. v. Jones*, 114 Ala. 519.

McCLELLAN, C. J.—The law applicable to this case, as now presented, is, in the main, sufficiently stated in the opinion of this court on the former appeal. *Woodward Iron Co. v. Herndon*, 114 Ala. 191. On that appeal we held that charge f, refused to defendant, should have been given. That charge, as number 21,

was requested on the last trial, and again refused. The
charge is as follows: "If the jury believe from the
evidence that, on the day the plaintiff's intestate re-
ceived his injuries, the smoke on along and by the
coke ovens was so thick that the track opposite the
upper half of the coke ovens could not be seen by per-
sons on the hand car when it came to the lower end
of the coke oven battery; and if they believe that the
said Neal knew or was informed that the yard engine,
in switching cars to and from the coke ovens, was lia-
ble to be or likely to be passing along through at any
time of day, and the hand car was so far behind the coal
train as that the said Neal could not see it and could
not tell how far ahead of the hand car it was, then
the court charges you that it was negligence in said
Neal to ride on said hand car through said smoke under
the circumstances, without stopping and sending a flag-
man ahead to protect the hand car from collision with
said yard engine." Counsel for appellee are mistaken
in their insistence that the evidence to which this charge
is referable is different on this trial from what is was
on the former one, and that the evidence is now undis-
puted to the effect that when the hand car reached the
lower end of the coke ovens Neal could see the coal
train, or could tell how far ahead of the hand car it
was. To the contrary, the great weight of the evidence
was that he could not then see the coal train nor know
how far it was in advance of him. The evidence as to the
various distances traveled by and the rates of speed
severally of the coal train, the hand car and the switch
engine goes circumstantially to this effect, and so does
the testimony of Andrews and of Howard. Indeed,
there is no evidence in the case except that of the wit-
ness Stone tending to show that Neal could see the
coal train or tell how far it was ahead of him when his
car reached the lower end of the coke ovens. The charge
was palpably not abstract, and its refusal was error
for which the judgment must be reversed.

It was not essential to recovery, however, that Neal
should have seen or been able to see the coal train when
he reached the lower end of the line of coke ovens. If
from seeing the train·before that as it ran up to the ovens

and noting its speed he was enabled to tell that he could run his car through the smoke before the switch engine could secure the right of way and at its usual speed come down into the smoke, the jury might find him justified in proceeding; and it cannot be affirmed as matter of law that he was guilty of negligence because he was any given distance behind the coal train when the latter reached the ovens, unless that distance was so great as that at the rates of speed the hand car and the coal train were respectively running and at the rate of speed the yard engine should have run and customarily did run to his knowledge there was a probability that the switch engine would have time to get on the main line after the coal train passed and get into the smoke before the hand car cleared it. On the distances and rates of speed hypothesized in charge 7 there was no likelihood that the engine going at two or three miles an hour—and there was testimony tending to show that to be its proper and customary speed—would come down from the office side of the track and meet the hand car in the smoke; and negligence cannot be affirmed as matter of law upon the facts postulated in that charge. These considerations apply also to refused charges 14 and 15, and perhaps others.

It is insisted that the general charge should have been given for the defendant because there was a side track only twenty-three feet from the smoke, on which the switch engine might have been standing, and from which it might have emerged onto the main track as soon as the coal train passed and gone immediately into the smoke and into collision with the hand car, however closely beyond twenty-three feet the latter may have been following the train, and that, therefore, it was negligence per se in Neal to follow the coal train at all, or at any rate to follow it at the distance of twenty-five yards shown by the evidence most favorable to plaintiff. There is plausibiliy in this view, but we do not think it is sound. As the switch engine was not on that side track, if Neal was guilty of negligence only by relation to that track a likelihood that this engine would be on it, such evidence was not *contributory* to his death. The

several special charges having reference this particular switch and side track were, for the same reason, also properly refused.

Charge 8 is faulty in pretermitting any reference to the unusual speed of the yard engine in coming down to and into the smoke, if not also for other reasons. Code, p. 1201, Rule 33.

On the propositions declared on the former appeal, charge 10 should have been given. It was negligence as matter of law for Neal to run his hand car into and attempt to go through the smoke so far behind the coal train as that that train would clear the main line and allow the switch engine *running at its usual rate of speed* to come down into the smoke before the hand car could get through it; and if the jury found that the engine did not exceed its usual rate of speed, and yet caught the hand car in the smoke, this demonstrates that Neal was negligent in going in under the circumstances: no ordinarily prudent man would have taken this risk.

The other charges refused to defendant are faulty for reasons given here or in the former opinion.

We deem it unnecessary to consider the exceptions reserved to the trial court's oral charge to the jury.

Exceptions reserved to rulings upon the competency of testimony are not discussed in the brief of appellant, and we do not pass upon them.

The bill of exceptions in this case was prepared in palpable disregard of the rule on that subject. It appears to be a stenographic report of the questions to and answers by the witnesses. Both questions and answers are in a great many instances repeated time again. Not only so, the answers to questions are repeated by counsel in the form of questions. We suppose counsel intended in this way to have the answers confirmed and reiterated by the witness; but it may be that they had no intention in the premises, but in sheer inadvertence repeated the answers while they were formulating new questions. It may be said with the utmost safety that of the 465 pages in this bill of exceptions, one hundred is taken up by unnecessary repetition. At least another one hundred could have been saved by resorting

[Speakman v. Roberts.]

to a narrative of the evidence and for the most part omitting the questions altogether. There seems to be an impression on the part of the bar that where the propriety of giving the general affirmative charge is involved it is necessary to set out questions and answers just as they transpired on the trial. This is a mistaken impression. All the evidence and all its tendencies may in almost every case and throughout almost any bill of exceptions be fully stated in narrative form. Occasionally it may be necessary in order to convey some shade of meaning which cannot be stated aptly, or where there is doubt as to the meaning, to set forth the question and the answer; but it is not conceived that this necessity can often arise. The provision of the rule to the effect that bills of exceptions should contain a statement of the testimony *in extenso* when the affirmative charge has been asked in good faith, by no means contemplates or authorizes the setting forth therein of the questions and answers, but only that the testimony—what the testimony was—shall be stated in full and in narrative form where that can be intelligently and intelligibly done. But for the impression which seems to obtain in the profession above referred to, in connection with the fact that nothing had been said by this court, before the preparation of this bill, to remove it, we should be strongly inclined to disallow the bill of exceptions altogether. As it is we deem it proper to impose upon appellant the whole cost of the bill of exceptions in the court below.

Reversed and remanded. Cost of bill of exceptions to be adjudged against appellant.