# Nashville, Chattanooga & St. Louis Railway v. Hinds.

### Failure to Deliver Freight.

(Decided June 12, 1912.  59 South. 670.)

1. *Contracts; Action; Plea; Notice.*—Under section 4297, Code 1907, a plea setting up as a defense to an action on a contract of affreightment, the failure to comply with the stipulations therein, requiring the giving of notice, which does not allege that the matters of which the shipper was required to give notice, were peculiarly within his knowledge, is insufficient.

2. *Parties; Real Party in Interest; Principal and Agent.*—Where the party in whose name the bill of lading is made out was merely acting as the agent of the shipper, the shipper was the real party in interest, and entitled to maintain a suit in his own name for the loss of the shipment.

3. *Appeal and Error; Harmless Error; Evidence.*—Where the jury found the average weight of the cattle involved in the suit to be 500 pounds, the admission in evidence of a memoranda showing the weights to average 639 pounds, was not prejudicial to the carrier, the shipper having testified that the average weight of all the cattle shipped was 600 pounds, that he saw the balance of the shipment weighed at destination and that he knew the memoranda showing the weight to be correct.

4. *Charge of Court; Sufficiency of Evidence.*—The trial court is not required to charge that there is or is not any evidence of a particular matter.

5. *Carriers; Goods; Limiting Liability.*—A carrier cannot, by special contract relieve itself of all its common law liabilities, nor of the results of its own negligence, although it may contract against some of its common law liabilities.

6. *Same; Loss or Injury; Negligence.*—Where the bill of lading provided that the shipper should load, unload, feed and water stock while in transit, and that any expenses incurred by the car-

rier in feeding, watering, etc., should be assessed against the stock, and the carrier employed a third person to unload, etc., it was its duty to see that such third person properly performed his duty, and was liable for a conversion of two of the animals by such third person.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by A. M. Hinds against the Nashville, Chattanooga & St. Louis Railway for loss of cattle while being transported. Judgment for plaintiff, and defendant appeals. Affirmed.

For decision of Supreme Court in answer to certified questions, see 59 South. 669.

The pleas will be found set out in the report of this case as certified to the Supreme Court. The following charges were refused to appellant:

(1) "The court charges the jury that under the contract of shipment it was Hinds' duty to attend the cattle, and unload, feed, and reload them himself, or to have an agent along with them to do this for him; and if he failed to do this, and defendant delivered the car to Foust & Yarnell for this purpose, then the defendant will not be liable for the acts of Foust & Yarnell."

(2) "The court charges the jury that, if two of the cattle were sold at Chattanooga by Foust & Yarnell, you cannot find for plaintiff as to those two head of cattle."

(3) "The court charges the jury that there is no evidence tending to prove that the death of any of the cattle was due to any negligence of the defendant."

(4) Affirmative charge.

(5) "The court charges the jury that there is no evidence tending to show that the railroad company employed Foust & Yarnell to unload, feed, and reload the cattle."

(7) "The court charges the jury that Foust & Yarnell were the agents of Hinds, and not of this defendant.

(8) Same as 2.

(9) "The court charges the jury that if they believe the evidence there cannot, under any aspect of this case, be a recovery for more than two head of cattle."

(10) "The court charges the jury that if two head died on the way to Huntland, and if two were sold by Foust & Yarnell at Chattanooga, and if the death of the two at Huntland was not due to any fault of defendant, then there can be no recovery by the plaintiff for anything, regardless of what took place between Chattanooga and Atlanta."

(11) "The court charges the jury that under the evidence the defendant is not responsible for anything done by Foust & Yarnell, for the reason that the contract provides that the duty of loading, unloading, and feeding the cattle rested upon the plaintiff."

(12) "If Foust & Yarnell sold two head of cattle at Chattanooga, and if they have not paid the proceeds of the sale to Hinds, they, and not the defendant, would be liable therefor to plaintiff."

(13) "If two head of cattle were sold by Foust & Yarnell at Chattanooga, then the defendant was not liable for them, whether the proceeds of the cattle have been paid to Hinds or not."

(14) "If 2 of the cattle were taken off dead at Huntland, and if their death was due to no fault of defendant, and if 2 of the cattle were sold by Foust & Yarnell at Chattanooga, and if 42 head were delivered in Atlanta, whether dead or alive, your verdict must be for the defendant."

STREET, ISBELL & BRADFORD, and SPRAGINS & SPEAKE, for appellant. The court erred in sustaining demurrers to pleas 4 and 7.—*C. of G. Ry. v. Henderson*, 152 Ala. 203. The effect of the above decision was not superseded or annulled by the provisions of section 4297, Code 1907.—*Barron v. M. & O.* South. 862; *L. & N. v. Oden*, 80 Ala. 38; *E. T. V. & G. v. Johnson*, 75 Ala. 596. The contract was made with John Hinds, and as the action was ex contractu, the contract was not admissible in this suit.—*Lucas v. So. Ry.*, 122 Ala. 529. Counsel discuss charges refused, but without citation of authority.

JOHN A. LUSK & SON, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—This suit was brought by the appellee for the damages which, in his complaint, he claims he suffered because of the failure of appellant to deliver to him, at Atlanta, Ga., four head of cattle shipped by him from Guntersville, Ala., to Atlanta. The cattle were shipped over the appellant's railroad in a car with other cattle. The appellee's evidence tended to show that there were in the car, when it was delivered to appellant, 47 head of cattle, averaging about 600 pounds each in weight; that they were not overcrowded in the car; and that when the car reached Atlanta 4 of the animals had disappeared from the car, and of the 43 remaining 1 was then dead, and 1 of the living animals died shortly after being taken from the car; so that the evidence of appellee tended to show that the appellant delivered to him only 42 head of cattle out of the shipment of 47 head. The dead cow, whose carcass was in the car when it reached Atlanta, was not an animal; it was the carcass of what had been, when alive, an animal.

The animals were first carried by appellant from Guntersville to Chattanooga. Between Guntersville and Chattanooga, there was evidence tending to show that two of the animals died and were thrown out of the car at Huntland, a station of appellant between Guntersville and Chattanooga. When the car reached Chattanooga, they were unloaded by Foust & Yarnell, who appear to have, contiguous to appellant's railroad, stockyards there. There was evidence tending to show that two of the cattle unloaded from the car by Foust & Yarnell were not loaded back into the car when it started on its journey to Atlanta, but were kept by Foust & Yarnell. While appellant contends that it had no connection with Foust & Yarnell, and that Foust & Yarnell were not its agents in the matter of unloading and reloading the car and in caring for the cattle while *out* of the car, nevertheless the witness who testified about what occurred in Chattanooga, and who was connected with Foust & Yarnell, shows that at least a part of the business of Foust & Yarnell was to unload and reload cattle for somebody—either the owners of cattle shipped in car load lots, or the railroads over which they were shipped—for this witness' testimony, fairly construed, shows that the unloading and reloading of appellee's cattle by Foust & Yarnell was in the line of their regular business. While he swears that his company has no connection with the railroad, nevertheless, among other things, he says the record of appellee's cattle "is made on a regular book I keep. This book is kept regularly in my business. * * * I always count them out of the car and go in the pen and count them."

The bill of lading introduced in evidence shows that it was issued to J. J. Hinds, and *not* to A. M. Hinds, the appellee. The evidence, however, without dispute shows that the contract of shipment was made by J. J. Hinds

for and on behalf of A. M. Hinds; and that appellee was therefore the real party to the contract.

The bill of lading contains a clause providing that, in consideration of a special rate "lower than the tariff rate," the party of the second part (appellee) hereby relieves said party of the first part (appellant) from the liability of a common carrier in the transportation of said stock and agrees that such liability shall be only that of a private carrier for hire." It also contains a provision that the appellee or "his agent will load and unload said stock at his own risk and feed, water and attend the same at his own expense; * * * *and it is agreed* that any *expense* so incurred by the party of the first part (appellant) *in behalf of the party of the second part,* or his agent or assigns, for *feeding, watering, loading, unloading or detention and care of such stock,* shall be assessed against such stock," etc. There is another provision in the bill of lading declaring that, "in case the said party of the first part (appellant) shall furnish laborers to *assist* in loading and unloading said stock, they shall be subject to the orders and deemed employees of said party of the second part (appellee) while so assisting."

There is still another provision in the bill of lading which, on account of its importance and the interpretation given to it in this particular case by the Supreme Court, we set out in full, as follows: "Sec. 10. As a condition precedent to the recovery of any damages for any loss or injury to live stock covered by this contract for any cause, including delays, the second party will give in writing notice of the claim therefor to some general officer, or to the nearest station agent of the first party, or to the agent at destination, or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of

destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of the stock at destination, to the end that such claim may be fully and fairly investigated; and that a failure to comply with the provisions of this clause shall be a bar to the recovery of any and all claims and to any suit or action brought therefor."

1.   In order that, in this case, all question as to the effect of section 4297 of the Code on section 10 of the bill of lading above quoted, might be set at rest, and a definite and final interpretation of the statute be had, we, being unable to reach a unanimous conclusion, certified to the Supreme Court, as abstract questions of law, *what* interpretation was to be given the above statute, and whether the effect of its adoption was to render void the above-quoted section 10, whether occurring in bills of lading covering intrastate or interstate shipments.   The Supreme Court held (see *Nashville, Chattanooga & St. Louis Railway v. A. M. Hinds, Supreme Court of Alabama,* 59 South. 669), that the said section 10, whether occurring in bills of lading covering intrastate or interstate shipments, was valid *only* as to matters resting peculiarly within the knowledge of shippers or consignees and that, in pleading such clause, the plea must state that the matter set up in the plea is a matter resting peculiarly within the knowledge of the shipper or consignee.   "In other words," says the Supreme Court in the above opinion, "the *plea* should allege, as a matter of fact to be proved, that the event was peculiarly within the knowledge of the party, yet the *contract* is not void for failure to state that fact in words."

Pleas 4 and 7 do not allege that the loss of the cattle was a fact resting peculiarly within the knowledge of

[Nashville, Chattanooga & St. Louis Railway v. Hinds.]

the appellee, and were therefore subject to the appellee's demurrer.

2. While the courts permit common carriers, in many instances, to contract against some of their common-law liabilities, we know of no decision—and counsel for appellant have referred us to none—holding that a common carrier can, by special contract, relieve itself of all common-law liabilities, or of the results of its own negligence; and it is evident that the court properly susstained the appellee's demurrer to the fifth plea of the appellant.

3. While the bill of lading was made out in the name of J. J. Hinds, the real party to the contract was the appellee, for whom J. J. Hinds acted as agent when the cattle were shipped. Appellee therefore had a right to maintain a suit in his own name for his loss.—*L. & N. R. R. Co. v. Williams, infra.*

4. Taking into consideration the evidence of appellee that the average weight of the 47 head of cattle was not less than 600 pounds per head, that he saw the 41 head weighed at Atlanta, and knew that their weights, as shown by a memorandum introduced in evidence, were correct, we cannot hold that the introduction of the memorandum in evidence was harmful to appellant. This memorandum showed that the average weight of the 41 head of cattle was about 639 pounds, and the verdict of the jury shows that they placed the weight of the four animals, the subject of the suit, at about 500 pounds. It cannot be contended that the memorandum did not show with correctness the weight of the animals sold in Atlanta and, as the verdict of the jury was evidently based upon four animals weighing about 500 pounds each, the presence of the memorandum in the evidence was plainly not harmful to appellant.

5. While, under the terms of the bill of lading, provision was made that the appellant should load, unload, feed, and water the stock while in transit, the bill of lading also provides that "any expense incurred by the party of the first part (appellant) in behalf of the party of the second part (appellee) or his agent or assigns, for *feeding, watering, loading, unloading or detention and care of such stock,* shall be assessed against such stock and collected from connecting carrier and consignee, upon delivery." In other words, says this contract of affreightment, it is the duty of the shipper to load, unload, water, and feed his stock; but if he fails to do it, and if, by reason of legal requirements, or for other reason, it becomes the duty of or necessary for the carrier to perform that service, *"any expense incurred shall be assessed against the stock."* The evidence shows that the appellee had nothing to do with loading or unloading, or with watering or feeding, the stock after they left Guntersville. Says the appellee: "When I got to Chattanooga, *they* were loading them out for Atlanta. I had nothing to do with loading or unloading them at Chattanooga." There is no evidence that appellee authorized Foust & Yarnell to load or unload his cattle, to water or to feed them. It is not contended that he ever paid them a penny for so doing. When the cattle reached Chattanooga, they were in possession of appellant; and it is plainly evident that the appellant, recognizing its duty under the law, employed Foust & Yarnell to unload, feed, water, and reload the cattle under the provisions of the bill of lading authorizing it so to do at the *appellee's* expense. Having committed the cattle to Foust and Yarnell's care for the above purposes, it was the duty of appellant to see to it that their duties were properly performed.—*Supreme Lodge Knights of Pythias v. Withers,* 177 U. S. 260, 20 Sup. Ct. 611, 44 L.

[L. & N. R. R. Co. v. McKenzie.]

Ed. 762; *Grand Lodge v. Hill,* 3 Ala. App. 483, 57 South. 147.

It is therefore evident that, in our opinion, the trial court was free from error in refusing to give charges 1, 2, 5, 7, 8, 10, 11, 12, 13, and 14, requested in writing by appellant.

6. It has been many times decided that a trial court will not be put in error for refusing to give to a jury a charge, requested in writing, stating that there is "no evidence" of a particular matter. For this reason, the trial court properly refused charges 3 and 5, requested in writing by appellant.

7. The question as to whether the appellant was liable for its failure to deliver the four head of cattle in Atlanta was not a question of law for the court, but, under the evidence, was a question for the jury.

There is no error in the record. The judgment of the court below is affirmed.

Affirmed.