## MODERN ORDER OF PRÆTORIANS v. CHILDS.   (6 Div. 411.)

(Supreme Court of Alabama.   Jan. 14, 1926. Rehearing Denied April 8, 1926.)

1. **Insurance** ⬳750—**Payment of dues at designated time and to designated officer may be made condition precedent to continuance of insurance.**

A fraternal benefit society is empowered to prescribe time of payment of dues, officer to whom they shall be paid, and make compliance therewith condition precedent to continuance of insurance.

2. **Insurance** ⬳718, 755(2)—**Benefit certificate may incorporate constitution by reference, and thereby prohibit waiver of provisions by subordinate body or officer (Code 1923, § 8477).**

Under Code 1923, § 8477, constitution of fraternal benefit society may be incorporated in the contract by reference, and may provide that no subordinate body nor officer shall waive provisions thereof.

3. **Insurance** ⬳755(2)—**That state manager had authority to collect dues implied that he could waive requirement as to payment thereof only to recorder.**

That state manager of fraternal benefit society had authority to collect dues implied that he had so far been made alter ego of corporation body in management of business that he could waive requirement for payment of dues only to recorder.

4. **Insurance** ⬳819(1)—**Evidence held to warrant finding that state manager of fraternal benefit society had power to employ agents to write insurance and collect dues.**

Evidence that state manager of fraternal benefit corporation as such employed an agent and provided him with application blanks, and agent, acting within employment, wrote insurance and collected dues from insured, to whom policy was issued, *held* to warrant finding that manager was empowered so to act for corporation as to persons dealing with it through such agency.

5. **Insurance** ⬳695—**State manager of fraternal insurance corporation, placed at head of state organization, held to have implied authority going with such position.**

When fraternal insurance corporation, although operating under constitution and by-laws, organizes its business on usual lines, and places a state manager as the head of state organization, he will, in absence of notice to contrary, be treated as possessed with implied authority going with position.

6. **Insurance** ⬳819(3)—**Where governing body empowered state manager to collect dues, it was evidence of waiver of requirement that dues be paid solely to recorder of local council.**

Where governing body of fraternal insurance society created office of state manager, and empowered him as such to collect dues, that in itself was evidence of waiver of constitutional requirement that dues should be paid solely to recorder of local council.

7. **Insurance** ⬳819(1)—**Possession of official signed receipts for dues by subagent was evidence of continuing agency to members who had been dealing with agent as such.**

Where members came into fraternal order through dealings with an agent named by the state manager, possession of official signed receipts of the order for dues by such subagent was evidence of continuing agency to members who had been dealing with him as such.

8. **Insurance** ⬳695—**Where authority of subagent did not cease as to persons theretofore dealing with him without notice, he was entitled to notice of termination of his agency.**

Where authority of agent, appointed by state manager of fraternal benefit society, did not cease as to persons dealing with him as such without notice to him of termination of his authority, he was entitled to notice of termination of his agency.

9. **Insurance** ⬳695—**If subagent was entitled to notice of termination of agency, members dealing with him prior to such notice should be protected.**

Since subagent appointed by state manager of fraternal benefit society was entitled to notice of termination of his agency, members of society dealing with him in good faith within scope of his agency prior to such notice should be protected.

Appeal from Circuit Court, Jefferson County; Roger Snyder, Judge.

Action on a policy or certificate of insurance by William A. Childs against the Modern Order of Prætorians. From a judgment for plaintiff, defendant appeals. Affirmed.

Pertinent provisions of the defendant's constitution are as follows:

Section 3 of article 20:

"It shall be the duty of every member to see that his dues are paid in time to his worthy recorder. Failure of the recorder to call and collect dues shall not prevent the member from lapsing. In the absence of the worthy recorder, the member shall pay dues to some officer of the council, or remit same direct to the Supreme Senate. Members failing to pay dues on time, in accordance herewith shall lapse immediately

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

without notice, and all rights, privileges, and benefits shall cease at once, except as to any paid-up and extended values to which they may be entitled as hereinafter provided. Notice of lapse may be thereafter sent out by the secretary, but shall be in the nature of a reminder only, and not a requisite either before or after suspension takes effect."

### Section 1 of article 37:

"No state senate or council, nor any officer thereof, or any agent, officer, deputy, or representative of the order shall be authorized to make, or enter into, any contract on behalf of the order or bind the Supreme Senate or executive committee, nor shall any such state senate, council, agent, officer, deputy, or representative be authorized to change, alter, or add to any written contract, nor to make any representations concerning the same except as therein contained or as contained in this constitution, nor shall the order be bound in any manner otherwise than as provided in this constitution and by the terms of said contracts in writing adopted and provided by the Supreme Senate or the executive committee. The order shall not be bound by any statement or act of any agent, representative, deputy, employé, or subordinate body or any officer or employé thereof, unless actually known to and ratified by the Supreme Senate or executive committee, or their authorized officers, and the order shall not be deemed to have notice of any fact or to be bound or estopped thereby unless the same shall be actually known to said Supreme Senate or Executive Committee or their authorized officers at the home office in Dallas, Texas."

Altman & Taylor and Fred G. Koenig, all of Birmingham, for appellant.

Officers or agents of the society have no power to waive the requirements of the constitution, and the provision against waiver by officers and agents is binding upon all members and beneficiaries. Code 1923, § 8477; Beiser v. Sovereign Camp, 74 So. 235, 199 Ala. 41; 29 Cyc. 188. A member who fails to pay dues at the time and to the officers prescribed in the constitution becomes a lapsed member. Sovereign Camp. v. Blanks, 94 So. 554, 208 Ala. 449; United Order v. Hooser, 49 So. 354, 160 Ala. 334; Fee v. National Ass'n, 81 N. W. 483, 110 Iowa, 271; Supreme Lodge v. Johnson, 104 S. W. 508, 47 Tex. Civ. App. 109; Supreme Lodge v. Hahn, 84 N. E. 837, 43 Ind. App. 75. A state manager has no power to waive in favor of a member the provision prescribing to whom a member shall pay dues. Code 1923, § 8477; 29 Cyc. 188.

A. G. Seay, of Troy, and Martin, Thompson, Foster & Turner, of Birmingham, for appellee.

A general manager of a corporation has general charge and control of the affairs of the company for carrying on the business for which it was incorporated. Sheip v. Baer,

97 So. 698, 210 Ala. 231; 14a C. J. 94, 359. And, unless restricted, his power and authority is coextensive with that of the company itself. Authorities, supra. Where a subagent is employed, with the expressed or implied consent of the principal, the subagent will be responsible to the principal. Insurance Co. v. Thornton, 30 So. 614, 130 Ala. 222, 55 L. R. A. 547, 89 Am. St. Rep. 30; 2 C. J. 291, 691. Where a general agent ceases to be such, acts by him done within the scope of his agency are binding upon his principal in respect to those who in good faith relied on his authority and had no notice or knowledge of the termination of the agency. Continental F. I. Co. v. Brooks, 30 So. 876, 131 Ala. 614; Wheeler v. McGuire, 5 So. 190, 86 Ala. 398, 2 L. R. A. 808; Johnson v. Christian, 9 S. Ct. 87, 128 U. S. 374, 32 L. Ed. 412. Payments may be made to an assistant of the collecting officer, and failure of the collecting officer to turn over money to the lodge, or failure of the lodge to send the money to the society, does not defeat the member's rights. 29 Cyc. 176, 177.

BOULDIN, J. The suit is upon a fraternal insurance certificate. The defense is lapse of the policy for nonpayment of monthly dues.

The constitution of the order, made part of the contract, requires monthly dues to be paid on or before the 20th of each month, as a condition to the continuance of the policy in force. Dues are payable to the "worthy recorder," and officer of the local "council." Section 3, art. 20, defining the duty of the member in making payment, and section 1, art. 37, limiting the authority of agents and officers, will be found in the statement of the case.

Plaintiff's evidence tended to show: In September, 1923, C. H. Gibson was "state manager" of the order, with jurisdiction over North Alabama, and "worthy recorder" of the local council at Birmingham; that he arranged with J. A. Stocks, a member of the order, having a real estate office near the Birmingham office of the order, to solicit members and take applications for membership and insurance, furnished Stocks with blank applications, and with blank receipts for dues under seal of the order and with the name of a former worthy recorder printed thereon, and authorized him to collect dues from time to time on policies he should obtain, issue receipts therefor, and make settlement with Gibson when he should call at Stocks' office for that purpose. Pursuant to this authority, Stocks solicited Wm. P. Childs, the insured, took his application, collected and receipted for the dues of October, November, and December, 1923. The application was accepted, the member admitted to the order, and the beneficiary insurance certificate issued payable to this plaintiff, as father of the insured.

Prior to January 20, 1924, the insured casually met Stocks and paid him the dues for January, February, and March, and after January 20th called at Stocks' office and obtained a receipt therefor. The insured came to his death as the result of an automobile accident on February 16, 1924. On learning of his death, Stocks informed Mr. Glover, the new worthy recorder, of having collected the dues, and offered to turn them in, which was refused on the ground that the policy had lapsed.

Defendant's evidence tended to show that on January 4, 1924, Mr. Gibson, preparing to remove to Florida, ceased to be manager and recorder, and was succeeded as manager by C. S. Chapman, and as recorder by C. A. Glover. There is evidence that neither Mr. Stocks nor Mr. Childs, the insured, had any notice of any change of Mr. Gibson's relations to the order at the time of the alleged payment of dues in January.

Defendant's request for the general affirmative charge is predicated upon the want of authority in Stocks to collect the dues from the insured. This is the vital question in the case.

[1, 2] A fraternal benefit society has power to prescribe the time for payment of dues, the officer to whom they shall be paid, and make compliance therewith a condition precedent to the continuance of the insurance in force. The constitution of the order may be incorporated in the contract by reference, and may therein provide that no subordinate body, nor any of its subordinate officers or members shall waive any of the provisions of the constitution. Code 1923, § 8477; Beiser v. Sovereign Camp, W. O. W., 74 So. 235, 199 Ala. 41; Sovereign Camp, W. O. W. v. Blanks, 94 So. 554, 208 Ala. 449; United Order of Golden Cross v. Hooser, 49 So. 354, 160 Ala. 334.

[3] Do these rules, in the light of the constitution of the order, and under the facts disclosed by the record, avoid the action of the state manager in making Stocks an agent to collect dues of members insured through him? Nothing in the constitution, so far as appears in the record, defines the powers of a state manager, unless the general limitations of section 1, art. 37, be so construed.

[4] There is evidence that the state manager, as such, has authority to collect dues. This, within itself, implies that the corporate body had so far made him its alter ego in the management of business within his jurisdiction, that he could waive the requirement for payment of dues only to the worthy recorder. That, in his capacity as manager, he employed an agent, provided him with blanks, arming him with the indicia of an ordinary insurance agency; that the agent, acting upon his appointment, did write the insurance and collect three months' dues from the insured, all of which was accepted and the policy issued—are circumstances tending to show that the state manager was empowered so to act for the company at least as to persons dealing with the order through such agency.

" * * * 'Unless his authority is especially restricted, the authority and power of a general or managing officer or agent are coextensive with the powers of the corporation itself, and he has authority to do any act on its behalf which is usual and necessary in the ordinary course of the company's business (Baird Lbr. Co. v. Devlin, 27 So. 425, 124 Ala. 245; Rhodes Fur. Co. v. Weeden, 19 So. 318, 108 Ala. 252), or which he is held out to the public as having authority to do, and may exercise all the powers which the board of directors could exercise or authorize under the same circumstances in the general management of the corporation business. * * * The fact that he occupies the position of general or managing agent implies, without further proof, his authority to do anything that the corporation itself may do, so long as the act done pertains to the ordinary business of the corporation.' " Sheip v. Baer, 97 So. 698, 700, 210 Ala. 231, 233; 14a C. J. p. 360, § 2221; 1 Mechem on Agency (2d Ed.) §§ 979, 980; Tenn. River Trans. Co. v. Kavanaugh, 13 So. 283, 101 Ala. 1; Montgomery Furniture Co. v. Hardaway, 16 So. 29, 104 Ala. 100.

[5] It is of the nature of the insurance business to act largely through agencies. In the conduct of business in states remote from the head office, the presence of some one on the ground with authority to speak for the company in all matters pertaining to the ordinary conduct of the business makes for the advantage of the insurer as well as the public. When a fraternal insurance company, although operating under a constitution and by-laws designed to promote the fraternal and insurance features of the order, organizes its insurance business on the usual lines, placing at the head of its state organization a state manager, he will, in the absence of notice to the contrary, be treated as possessed with the implied authority going with the position.

[6, 7] However full the provisions of section 1, art. 37, limiting the power of officers and agents, this does not apply to action of the corporate body. So, if the governing body created the office of state manager, and empowered him, as such, to collect dues, this within itself is evidence of waiver of the requirement that dues should be paid solely to the worthy recorder of a local council. Members coming into the order through dealings with an agent named by the state manager, whose act in collecting dues had not been questioned, were, in the absence of notice of a change of status, authorized to deal with such agent, having possession of the official signed receipts of the order for dues. These facts were evidence of continuing agency to members who had been dealing with him as such.

" * * * · 'When third parties have dealt with an agent clothed with general powers, the agency continues as to them, after revocation, until they have notice thereof. Also the principal may be liable for acts of the agent after revocation, to third persons, who never dealt with him previously, if they, in common with the public at large, are justified in believing that such agency existed, and have no notice of its revocation.' " Continental Fire Ins. Co. v. Brooks, 30 So. 876, 878, 131 Ala. 614, 620; Simpson & Harper v. Harris & Scrandrett, 56 So. 968, 174 Ala. 430; Sun Ins. Office of London v. Mitchell, 65 So. 143, 186 Ala. 420; 14 A. L. R. 846, note.

[8] Appellant insists that Stocks was a subagent of Gibson, that the subagency terminates with the agency to which it is attached, and that no notice was required of the termination of the subagency of Stocks. The general rule is:

"The termination of the authority of an agent terminates also the authority of subagents who derive their authority from him, and this is true, even though he may have been expressly authorized to appoint them if they were appointed as his agents." 1 Mechem on Agency (2d Ed.) p. 446, § 622.

Conceding, without deciding, that Stocks was a subagent, the question comes, Did his authority cease as to persons theretofore dealing with him, without notice to Stocks of the termination of his authority? Where the authority of the subagent ends as the result of the termination of the authority of the agent, the rule as to notice to the subagent is thus stated:

"Where the subagent derives his authority solely from the agent, no notice is required to be given by the principal to the subagent of the revocation of the agent's authority; but, where the subagent was appointed by and with the authority of the principal, he is, as has been seen, the agent of the principal, and notice should be given to him of the revocation of his authority." 1 Mechem on Agency (2d Ed.) p. 448, §§ 627, 332, and 333.

[9] The appointment of Stocks by the state manager of the company, with the authority above indicated, warrants an inference that Stocks had authority to act for and on behalf of the company, and, if a subagent, in the sense that he was subordinate to and under the control of the manager, he was entitled to notice of the termination of his agency. If he was entitled to notice, then the member dealing with him in good faith within the scope of his agency prior to such notice to either would be protected.

An instruction, therefore, declaring that the severance of the relation of manager by Gibson at once terminated the authority of Stocks, as subagent, ignoring the question of notice to Stocks, was properly refused. The plaintiff's evidence does not warrant the view that Stocks was merely agent of the insured to deliver the dues to the worthy recorder within the time required.

The rulings of the trial court were in harmony with these views.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.