140 So. 557

**MOST WORSHIPFUL GRAND LODGE OF ANCIENT FREE AND ACCEPTED MASONS OF ALABAMA (COLORED) v. CALLIER.**

1 Div. 717.

Supreme Court of Alabama.
March 24, 1932.

Harsh & Harsh, of Birmingham, for appellant.

Adams & Gillmore, of Grove Hill, for appellee.

THOMAS, J.

The motion to strike is based on many passages of the bill of exceptions set out in hæc verba. There should have been a narrative recital of the evidence as prescribed by Circuit Court Rule No. 32. Louisville & N. R. R. Co. v. Farmers' Produce Co., 17 Ala. App. 388, 85 So. 578; Turner v. Thornton, 192 Ala. 98, 68 So. 813; Harris v. Carter, 220 Ala. 444, 125 So. 608; Woodward Iron Co. v. Herndon, Adm'r, 130 Ala. 364, 30 So. 370. The affirmative charge requested and refused to defendant is thought, by appellant, to be better illustrated by the bill of exceptions as presented. We cannot commend this practice; however, we will consider the case on its merits.

The trial was had on amended counts 1 to 6, inclusive, based on "death benefits" by fraternal order; and the pleading was in short by consent, with leave to give in evidence special matters of defense sought to be set up by pleas 4 and 5, to which demurrers were sustained.

The constitution of defendant, produced and in evidence, purported to be that "Enacted by the Grand Lodge at Tuscaloosa, Alabama, August 20, 1925." In the preamble or enacting clause are the following recitals:

"Be it resolved by the Most Worshipful Grand Lodge of Ancient Free and Accepted Masons of Alabama that the Endowment Laws now existing be changed so as to read as follows:

"Widows and Orphans Endowment

"For the better protection of, and provision for the widows and orphans of deceased worthy Master Masons of this jurisdiction, the Most Worshipful Grand Lodge of Ancient Free and Accepted Masons of the State of Alabama does hereby establish the following by-laws for the regulation and government of the Endowment Department with the understanding that—

"The funds of the Endowment Department are purely charitable funds and under no circumstances are questions and disputes arising under it to be carried to a court of law until the beneficiary has exhausted all means for an adjustment of the claim with the Grand Master and an appeal from his adverse decision to the Grand Lodge and its adverse decision is had.

"Revenues

"First, (a) Each Subordinate lodge shall pay to the Widows' and Orphans' Endowment Department for every financial member

according to the following schedule and classification of such members:

"Members belonging to Class A, monthly dues are $1.25," etc.

This is followed by statements as to the required "revenues" or "dues" to be exacted by the subordinate lodges from the several classes of members, and failing in this requirement the subordinate lodge is suspended; provisions for assessments, making endowment assessments precedent over monthly dues, and charging the worshipful master with the duty to see that the endowment assessments are paid; for suspension; and providing that each lodge shall be responsible for all its financial members; for reinstatements, suspensions, or expulsions or neglect of duty by officers; for monthly reports from subordinate lodges; for delinquent lodges and members; form of notice and proof of death; the required certificates from doctor and undertaker, and from the lodge; and it concludes with the agreement and provision "of payment of endowment upon proper proof of death" of a member. It is further specifically stated that: "In case of death of a member the beneficiary shall be paid according to the following classification:" Third year, endowment thirty-sixth month, $500 for class A; $400 class B; $300 class C, etc.; the amounts of monthly dues being $1.25 for class A, $1 for class B, and $.75 for class C.. etc. And the receipt book and other evidence for plaintiff show that decedent was paying the $1.25 monthly rate (or class A dues); that he was within the third year of class A and had paid his dues for and from January 1, 1924, to September 31, 1929.

It is further stated in the endowment constitution, that: "All members of the Endowment Department, as well as their beneficiaries are hereby presumed to know and are bound by the by-laws of the Endowment Department now existing or hereafter enacted."

The catalogued dues of the grand master are set out as follows:

"The Grand Master is the head of the Endowment Department and shall have entire and exclusive jurisdiction of the affairs of the Endowment Department; except that any person feeling aggrieved over his action or decision has the right to appeal to the next Grand Lodge after his decision for relief.

"He shall order warrants drawn by the Endowment Secretary for the payments of endowments as well as other expenses of the Endowment Department.

"He shall have the right to appoint officers of the Endowment Department if a vacancy should occur in such office or offices until the next meeting of the Grand Lodge who shall elect one of its members to fill the vacancy.

"He shall sign all checks or warrants together with the Endowment Secretary and Endowment Treasurer for all Endowments or other expenses of the Endowment Department," etc.

The duties of the endowment secretary are, in part, as follows:

"For the convenient and economical administration of the Endowment Department there is hereby created two separate offices, viz.: Endowment Secretary and Endowment Treasurer. * * *

"It is the duty of the Endowment Secretary to accept from the secretaries of the several subordinate lodges the dues of the Endowment members of such lodge and to receipt the secretaries for the same and to forward the same to the Endowment Treasurer without delay, and obtain from him his receipt for such dues.

"He shall pass upon the admittance of a suspended member or delinquent member to the Endowment Department."

The witness Foster testified that he was secretary of the subordinate lodge of which assured, T. C. Callier, was a member in good standing, having paid all his dues and assessments to and at the time of his death; that witness had held that office since 1914, from which time to his death the assured or "benefit member" had duly paid and was not in arrears at the time of his death on June 23, 1929; that all dues and assessments collected from Callier by his lodge and by such official thereof were duly forwarded in the form of a cashier's check or money by United States mail and post office in letters properly addressed, with the proper postage affixed thereon (Sovereign Camp, W. O. W. v. Adams, 204 Ala. 667, 672, 86 So. 737, and authorities), to C. W. Peters, as the secretary of the endowment department, at the head office of this order and of that official at Birmingham, Ala.; that he had due acknowledgments and receipts from said superior officer of defendant lodge for all remittances, including that for Callier, and placed them in his lodge room in a receptacle for such receipts, and they were destroyed by fire of the lodge building in April, 1929.

For the defendant said Peters testified that, as such official, or otherwise, he did not receive the remittances for the years 1928–29; that Callier was delinquent, with others of that lodge, from December, 1927, to the date of his death; he further stated that this "association takes charge of all the endowment funds and pays whatever endowments are to be paid." Thus there was conflict on the one question of fact—whether Callier was at the date of his death in the class indicated, and in good standing? And as to this a jury question was presented and was so submitted by the court. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

It was decided by this court in Supreme Lodge of World Loyal Order of Moose v. Kenny, 198 Ala. 332, 73 So. 519, L. R. A. 1917C, 469, and Supreme Lodge of the World, Loyal Order of Moose v. Gustin, 202 Ala. 246, 80 So. 84, that, under the rule of agency, the superior lodge of that fraternal order was liable for damages to members being initiated; in Sanders v. Gernet Bros. Lumber Co., 221 Ala. 469, 129 So. 46, it was held one corporation may be the "general agent and arm" of another in conducting "its advancing business," and was the beneficial owner and may sue on notes taken for advances made; and in Jefferson County Burial Society v. Cotton, 222 Ala. 578, 133 So. 256, it was declared that legal fiction of distinct corporate existence will be recognized to protect the corporation in the conduct of its business, but not as a device for evading responsibility. McCaskill Co. v. United States, 216 U. S. 504, 30 S. Ct. 386, 54 L. Ed. 590. See, also, Birmingham Realty Co. v. Crossett, 210 Ala. 650, 98 So. 895, for authorities on agency or affecting the parent corporation. So much by way of analogy.

The witness Foster testified that there was no separate organization in the local lodge as the "Endowment Department," and that every member of the lodge is a member of the endowment department; that everything belongs to the endowment department; that no member is admitted to endowment without first being admitted to the Grand Lodge; that Callier paid all required dues or endowment.

Appellant, in answer to interrogatories under the statute and in evidence, admitted defendant to be duly incorporated in 1910 in Jefferson county, Ala.; that in answer to the following interrogatories:

"34. Is it not a fact that all members of your Grand Lodge must be members of the Endowment Department?

"35. Is it not a fact that if a member of the Endowment Department does not pay his Endowment dues he is dropped or removed from the Grand Lodge?

"36. How much was T. C. Callier required to pay to keep his insurance or benefit certificate in force? To whom and when was he required to pay it?"—defendant answered:

"34. Yes, and effort is made to get members to join the Endowment Department for their own good.

"35. It is a fact that the Endowment Department is an organization solely for Masons and no one but a Mason in good standing can be a member of the Endowment Department, and it is a fact that if any member of Endowment Department gets behind so as to be dropped from the Grand Lodge or Local Lodge he ceases automatically to be a member of the Endowment Department, but it is also a fact that no matter how well he keeps up his dues in the Endowment Department, while he still is a Mason in good standing he is not a member of the Endowment Department after he is in arrears as much as two months.

"36. T. C. Callier was required to pay to the Endowment Department One Dollar and Twenty-five cents ($1.25) per month to keep his endowment rights in force. He had no insurance or benefits. He was required to pay this by the by-laws to the Endowment Department and it is expressly provided in the by-laws that the local lodge and its officers were his agents and not the agents of the Endowment Department, so that if he paid to the local lodge and the local lodge did not pay to the Endowment Department, he might be a Mason in good standing but he would not be entitled to Endowment."

Answers 3, 4, 5, and 6, to plaintiff's interrogatories touched upon the relation, agency, or association of the Grand Lodge and its endowment department, as follows:

"(3) Defendant could not say that it maintains and has affiliated with it an Endowment Department, but there is an organization of Masons, of which the Grand Lodge has supervisory jurisdiction known as the Endowment Department Ancient Free and Accepted Masons of Alabama. However, it is a separate organization and neither the Grand Lodge nor any other Masons other than the Association known as the Endowment Department Ancient Free and Accepted Masons of Alabama is not in any way responsible for the payment of endowments. One requirement to become a member of the Endowment Department is that the person must be a Mason in good standing with his local lodge, and in addition to that he must pay his dues in the Endowment Department according to the by-laws of that department, and his beneficiary gets endowment strictly in accordance with the by-laws of that department. This endowment has no office other than in Birmingham, Alabama, and does not do any business outside of Birmingham, Alabama. All contracts made with it are made at Birmingham, Alabama, and it has no agent or officer located any where other than Birmingham.

"(4) The Endowment Department is not a corporation, but is a voluntary association. Many members of the Masonic Lodge (Colored) are not members of the Endowment Department. The Grand Lodge merely supervises the Endowment Department, but does not in any way become responsible for its debts or obligations. This supervision is for the benefit of those masons who become members of the Endowment Department.

"(5) Utopia Lodge No. 251 would have the record when T. C. Callier became a member of that lodge and this defendant does not know.

368

"(6) The defendant did not issue a certificate of insurance or benefit certificate to the said T. C. Callier at any time and the Endowment Department could not be properly called the Endowment Department of the Defendant. We have explained its character. It does not at any time issue certificates of insurance or benefit certificates to anybody and defendant presumes that it did not issue one to Callier. Neither the defendant nor the Endowment Department are insurance orders, but the Endowment Department does give benefits under its by-laws to the beneficiary of its members who are in good standing at the time of death not only with the Endowment Department, but with the order itself, that is, with the local lodge but not otherwise. The Endowment is not a fixed sum, but is paid according to the class in which the member of the Endowment Department chooses to belong and for the length of time he has been a member in good standing of that Department."

In said interrogatories, defendant was asked to attach full and complete copies of the constitution and by-laws of the Grand Lodge, or the portions thereof which affected the relations of the parties, and only the laws of its endowment department were supplied by defendant, those being in the Constitution to which we have adverted. It may be said that this document provides that the Grand Lodge is not "in any way or manner bound by any promise or statement of any officer or member of a subordinate lodge; that the members of each lodge are required to pay dues or assessments to keep in good standing; that each subordinate lodge is bound for all financial obligations of its members; and that subordinate lodges in arrears are not entitled to representation in Grand Lodge meetings." The evidence for plaintiff showed that Callier and witness representing the local lodge were members and representatives to the Grand Lodge meetings held respectively at Birmingham and Mobile.

The contract relation, or that for benefit in the nature of insurance, entered into between a beneficial or fraternal society and its members, where no certificate is issued, is to be ascertained by reference to the society's charter of incorporation or articles of association and its constitution and by-laws. 45 C. J. 8; Sovereign Camp, W. O. W. v. Blanks, 208 Ala. 449, 94 So. 554; Sovereign Camp, W. O. W. v. Adams, 204 Ala. 667, 86 So. 737; Sovereign Camp, W. O. W. v. Gay, 207 Ala. 610, 93 So. 559; Sovereign Camp, W. O. W. v. Pritchett, 203 Ala. 33, 81 So. 823; Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367; Supreme Commandery of Knights of Golden Rule v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332. And if the relation of insurer and assured, or benefits in the nature thereof, existed between the district grand lodge and the member, and the relation and membership were in good standing with the parent lodge, action may be maintained against the grand lodge (45 C. J. 283), where the evidence further shows it was made in behalf of the grand lodge; held properly against the grand lodge rather than the district grand lodge. Endowment Dept. District Grand Lodge No. 23, G. U. O. O. F. v. Harvey, 6 Ala. App. 239, 248, 60 So. 602, where the obligation to pay was fixed upon the endowment department and was presumed to have been executed by the authority of the Grand Lodge in the absence of a plea of non est factum; and District Grand Lodge No. 23, United Order of Odd Fellows in America v. Hill, 3 Ala. App. 483, 487–489, 57 So. 147, 149, held the Grand Lodge and the district grand lodge liable. The court said:

"A Grand Lodge appears to be that part of the order which governs its business and social affairs in a state or territory, and a lodge that part of it which is confined in its operations to a particular community. The Supreme Lodge, the Grand Lodges, and the various lodges constitute the order or society. 1 Bacon on Benefit Societies and Life Ins. § 74.

"In Alabama the Grand Lodge, through which the order operates in the state, is known as 'District Grand Lodge of Alabama No. 23, Grand United Order of Odd Fellows,' and in article 3 of the constitution of said Grand Lodge it is provided: 'The amount of insurance to which each member shall be entitled under this plan shall be five hundred dollars to be paid to the person or persons named on the face of the policy within sixty days after the filing of the death notice, as per requirements under article xi of this constitution.' Under the constitution of the parent order, a member in good standing in his lodge is a financial member, and each Grand Lodge is authorized by proper by-laws to create an endowment department, and to compel each of its members to become an endowment member. * * * It is therefore manifest that, while the appellant has certain officers whose principal duties are to look after the financial standing of each of its lodges and each of its members and for that reason has what it terms its endowment department, this is for the convenience and proper management of the insurance feature, and the appellant is, as to each of its members, a beneficial life insurance association. It follows, therefore, that appellant, and not its endowment department, is the party liable to appellee if appellee is entitled to recover on the certificate of life insurance in evidence in this case. No other conclusion can be drawn from the language of the constitution of the order or the constitution of the endowment department of said Grand Lodge of Alabama. The money collected by the endowment department is for the equal benefit of all the members of the Grand Lodge in

good financial standing, just as is all the other money paid in by its members, except such part of it as is necessary to meet the current expenses of the lodges, the Grand Lodge, etc., and all of such members in the aggregate, therefore, are the real owners of the money for said purposes. There is no magic in mere words to change the real into the unreal. A device of words cannot be imposed upon the court in place of an actuality of fact. Union Mut. Ins. Co. v. Wilkinson, 13 Wall. 235, 20 L. Ed. 617."

And in Supreme Lodge K. of P. v. Connelly, 185 Ala. 301, 64 So. 362, the suit was against the Supreme Lodge, and not its endowment rank or insurance department, and the case of District Grand Lodge, etc., v. Hill, supra, was cited with approval; and so, on agency in Nashville, Chattanooga & St. Louis Railway v. Hinds, 5 Ala. App. 596, 604, 59 So. 670.

It is further held (8 A. L. R. 413): "* * * that where the constitution of a mutual benefit insurance association provides that any subordinate lodge in arrears for dues 'shall be suspended,' and notified thereof, and remain suspended until reinstated, and that the members of such a subordinate lodge are not insured during such period of disability, the provisions are not self-executing and cannot be asserted as a defense against the claim of a member of a subordinate lodge which is in arrears, as to dues to the grand lodge, in the absence of a showing of a literal and exact compliance with the constitutional provisions. District Grand Lodge, U. O. O. F. v. Hill (1911) 3 Ala. App. 483, 57 So. 147."

This was the rule applied in Supreme Lodge, Knights of Pythias v. Withers, 177 U. S. 260, 20 S. Ct. 611, 44 L. Ed. 762. And in Supreme Lodge K. of P. v. Connelly, 185 Ala. 301, 64 So. 362, 363, where the local agent of the fraternal insurance order was "to receive from members money on the dues and give a receipt," and which, in that case, there was a refusal to receive the requisite sum tendered for John M. Connelly to satisfy his assessment, on the ground that Connelly was not a member and "was not among those insured in that jurisdiction," it was held that no further tender was necessary, and such agency and ground bound the Supreme Lodge. So much for the question of agency in such matter, that the agent may accept dues in money (and not chattels) and bind the sovereign. Sovereign Camp, W. O. W. v. Adams, supra; Sovereign Camp, W. O. W. v. Blanks, 208 Ala. 449, 94 So. 554; National Order of Mosaic Templars of America v. Lile, 200 Ala. 508, 76 So. 450; Modern Order of Praetorians v. Childs, 214 Ala. 403, 108 So. 23.

■ It follows that the just and true interpretation of the contract relations of the parties, under the constitution and by-laws, to the ends to be achieved and benefits to respectively accrue, was to get members in the several departments of the Grand Lodge —here Callier, if a benefit member in good standing of Utopia Lodge No. 251, was eligible to and did represent that lodge in Grand Lodge assembled—that the district lodge was within that agency and scope of association and relation and was an arm of the Grand Lodge and its department or endowment department, and within the line and scope of that agency bound the Grand Lodge. Such was the effect of the decision in Modern Order of Praetorians v. Childs, supra.

The trial judge properly gave charge A, as follows: "I charge you gentlemen of the jury, that if you believe from the evidence and under the law as the Court has given it to you, that Mattie Callier is entitled to recover any amount from Endowment Department Ancient Free and Accepted Masons of Alabama (Colored), then I charge you that she is entitled to recover such amount from the defendant in this case."

There were exceptions to remarks of counsel. The first was promptly withdrawn on objection, and was in its nature and result within the class of eradicable remarks or arguments. Western Railway of Ala. v. Mays, 197 Ala. 367, 72 So. 641; City of Huntsville v. Phillips, 191 Ala. 524, 67 So. 664; Birmingham Railway, Light & Power Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann. Cas. 1914C, 1037; and so of the second remark of counsel to which exception was reserved.

However this may be, there was no exception duly taken to the statement of the court, made for the purpose of correcting the error, if such there was. There was no further motion made to call the court's attention, or to the inadequacy of instruction, or to take the case from the jury. The court was not properly appealed to, to further remedy what wrong that had occurred, by eradicating any effect of the argument in question, it not being of the character or class of arguments held ineradicable. Anderson v. State, 209 Ala. 36, 43, 95 So. 171; Bestor v. State, 209 Ala. 693, 96 So. 899; Fulton v. Watts, 209 Ala. 408, 96 So. 184; Moulton v. State, 199 Ala. 411, 74 So. 454; James v. State, 170 Ala. 72, 54 So. 494; Stone v. State, 105 Ala. 60, 17 So. 114; Carter v. State, 219 Ala. 670, 673, 123 So. 50; Milton v. State, 213 Ala. 449, 105 So. 209; Loeb v. Webster, 213 Ala. 99, 104 So. 25; Hanye v. State, 211 Ala. 555, 101 So. 108.

■ In the examination of the witness, D. N. Foster, the following occurred:

"Q. 'As Secretary of Utopia Lodge Number 251 of this Grand Lodge what were your duties, Donnie?' A. 'Kept a record of the proceedings, collect and pay out money by the order of the worshipful master.'

"Q. 'Who was the worshipful master?' A. 'We had three or four while I was secretary.'

"Q. 'Was it your duty to collect the dues or assessments for this endowment benefit?' A. 'Yes sir. It was the treasurer's duty to collect it but it was turned over to me at the lodge—before we left the lodge he turned it over to me.'

"Q. 'After the money would be turned over to you, what was it your duty to do with it, Donnie?'

"Defendant's counsel thereupon objected to the question on the grounds that it called for a conclusion as to his duties.

"The court overruled said objection and defendant's counsel then and there excepted to said ruling of the court.

"Thereupon said witness further testified on direct examination as follows:

"It was my duty as secretary to forward it right straight to the office at Birmingham. The members of the local (lodge) had receipt books. It was my duty to mark the books. Each member had a book."

In this there was no invasion of the province of the jury.

The witness C. W. Peters, as secretary of the endowment department of defendant, having testified at length as to assured's payment of dues and default thereof for failure to make one or two payments, further testified that there were members of the Grand Lodge who did not belong to the endowment department; and was asked, by plaintiff's counsel, over defendant's objection and exception, if it "is in accordance with the laws of your Grand Lodge to carry any members as a member of the Grand Lodge when he is not a member of the endowment department?" To which he answered: "Yes * * * It has been done." To the further question of "That didn't answer the question: Is it permissible or is it not?" witness answered: "Yes sir, it is permissible," and stated he had not with him a copy of the constitution or by-laws of the Grand Lodge. In this examination of the witness there is no reversible error.

There was no error in the examination of the witness Foster on questions of fact bearing upon the question of representation of a local lodge in good standing in the general lodge; that testimony was material and competent as affecting the instant local lodge and its members, of whom was T. C. Callier, and as it bore upon his relation to the general lodge and its endowment department for the years 1928 and 1929. It was the highest interpretation of its constitution and by-laws, by the defendant and by the assured or beneficiary member, during the years indicated and that in which his death occurred.

It was important to the jury, in the consideration of the controverted fact of good standing or not of Callier at the time of his death, to have the fact that the local lodge and the assured beneficiary were alike in good standing and in a representative capacity. So of the action of Peters in writing the lodge or its members thereof as to the reinstatement and retention of their "masonic or beneficiary age" that affected the amounts of the benefit. The fact that Callier, with others, was reinstated by payment of the required amounts, was properly shown by Donnie Foster and the official receipt book of the lodge.

We have examined the record, which must be admitted was expanded too much in detail by stenographic recitals. We find no reversible error. The question of good standing of Callier at the date of his death was proper for the jury. That of the liability of the Grand Lodge for the endowment benefits, evidenced by the constitution and by-laws enacted for its insurance benefits—its endowment department—by the Grand Lodge, was properly concluded by the court in giving charge A. Any other construction of the law of liability would be a device of words not compatible with the beneficent efforts of such order; the Most Worshipful Grand Lodge of Ancient Free and Accepted Masons of Alabama (Colored) was the party primarily liable and responsible for a judgment in a case like this from its endowment department funds.

"Nothing is plainer than the proposition, that the distinction between express contracts and implied contracts lies, not in the nature of the undertaking, but in the mode of proof." City Council of Montgomery v. Montgomery Water Works Co., 77 Ala. 248; Keel v. Larkin, 72 Ala. 493; Weil v. Centerfit, 201 Ala. 531, 532, 78 So. 885; Solomon v. David Rothschild & Co., 211 Ala. 313, 100 So. 230; 2 Greenl. Ev. § 102; Select. Readings of the Law of Contracts (1931) p. 148.

In the due consideration of the constitution and by-laws and other evidence, the implications, express and implied, of the relation of membership, the payment by him, if made as required by its law, of dues and assessments necessary for continued membership in good standing within its benefits, and those to accrue to the Grand Lodge in extension of its prestige, benefits, and power to all of its members, and those intended and offered to the membership in good standing of the class in question, were the benefits secured in the protection and right payment of the fund by the endowment department of the Grand Lodge. This is necessary for the continued existence and proper functioning of such a fraternal benefit corporation or society, beneficent in its general purpose, and personal in its contact and relations and effect upon its members, giving him the right of

access and protection in court for a double purpose, to protect the trust fund and compel due payment to him as individual beneficiary of his aliquot part, as one of cestuis que trust. McCall, Atty. Gen. v. Grand Lodge Knights of Pythias, 217 Ala. 194, 115 So. 254. If this were not the law, the "anomaly would be presented of a private trust without enforceable rights in the cestui que trust." McDonald v. McDonald, 92 Ala. 537, 9 So. 195, 196. As a rule the funds of a mutual benefit society are merely held by it in trust. 19 R. C. L. § 106, p. 1319. This rule was followed in Grand Lodge, Knights of Pythias v. Shorter, 219 Ala. 293, 296, 297, 122 So. 36; Id., 222 Ala. 404, 132 So. 617. It is true the last-cited cases were in equity. Individual rights were dealt with on certificates of benefit in Supreme Commandery of Knights of Golden Rule v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332, and Woodmen of the World v. Alford, 206 Ala. 18, 24, 89 So. 528. See, also, Supreme Council of Royal Arcanum v. Behrend, 247 U. S. 394, 38 S. Ct. 522, 62 L. Ed. 1183, 1 A. L. R. 966.

In the instant case the claim for benefit is payable only from the specific fund in the endowment department.

We find no reversible error, and the judgment of the circuit court will be affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.